JOHN D. FORSYTH, SBN 178341
LAW OFFICES OF JOHN D. FORSYTH
2431 Fillmore Street
San Francisco, California 94115
Telephone: (415) 401-0729
Facsimile: (415) 401-7609
sotts@earthlink.net

Attorney for Defendant
CLARENCE CHAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CLARENCE P. CHAN,<br><br>  Defendant. | Case No. 5:19-cr-00521-BLF-1<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, QUASH SEARCH WARRANTS, AND TRAVERSE PURSUANT TO *FRANKS v. DELAWARE* |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Factual Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Summary of Legal Grounds for Suppression . . . . . . . . . . . . . . . . . . . . . . . 2

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Warrantless Police Actions on May 28, 2018. . . . . . . . . . . . . . . . . . . . . . 3

    B.   Search Warrants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.   First Search Warrant (Exhibit A) . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.   Second Search Warrant (Exhibit B) . . . . . . . . . . . . . . . . . . . . . . . 7

    C.   False Statements and Omissions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   MR. CHAN HAS A REASONABLE EXPECTATION OF PRIVACY TO
    CHALLENGE THE LEGALITY OF THE SEARCHES AND SEIZURES
    UNDER THE FOURTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   THE WARRANTLESS UNLAWFUL ENTRY AND SEARCH OF MR.
    CHAN'S HOME IN VIOLATION OF THE FOURTH AMENDMENT
    REQUIRES SUPPRESSION OF THE EVIDENCE SEIZED IN THIS CASE. . 13

    A.   The Warrantless Entry and Search is Presumptively Unreasonable. . . . . 13

    B.   No Exception, Including Exigent Circumstances, Applies. . . . . . . . . . . . 14

        1.   Protective Sweep. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.   Emergency Aid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    C.   Plain View Doctrine Does Not Apply. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    D.   The Warrants Are Not Independent of the Antecedent Fourth Amendment
    Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.   THE SEARCH WARRANTS MUST ALSO BE QUASHED AND EVIDENCE
    SUPPRESSED BASED ON FACIAL INSUFFICIENCY OF PROBABLE
    CAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.   Legal Standards for Facial Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.   Application of Standards Revealing Facial Insufficiencies in this Case. . 23

VI.    ALTERNATIVELY, DEFENDANT HAS MADE A SUFFICIENT
       PRELIMINARY SHOWING TO REQUIRE A *FRANKS* HEARING AND
       TRAVERSAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.   LEON'S GOOD FAITH EXCEPTION DOES NOT APPLY. . . . . . . . . . . . . . . 28

VIII.  ALL EVIDENCE OBTAINED AS A RESULT OF UNLAWFUL SEARCHES
       AND SEIZURES IS THE "FRUIT OF THE POISONOUS TREE" AND MUST
       BE SUPPRESSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IX.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

1

## **TABLE OF AUTHORITIES**

2

3

**Table of Cases**

4

*Arpin v. Santa Clara Valley Transportation*, 261 F.3d 912 (9th Cir. 2001) . . . . . . . . . . . . . . . 23

*Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Brigham City v. Stuart*, 547 U.S. 398 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Brigham v. Stuart*, 547 U.S. 398 (2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brinegar v. United States*, 338 U.S. 160 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

*Franks v. Delaware* 438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 12, 26-29

*Giordenello v. United States*, 357 U.S. 480 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Groh v. Ramirez*, 540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Illinois v. Gates*, 462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24, 26

*Jones v. United States*, 362 U.S. 257 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Katz v. United States*, 389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kentucky v. King*, 563 U.S. 452 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kirk v. Louisiana*, 536 U.S. 635 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kyllo v. United States*, 533 U.S. 27 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maryland v. Buie*, 494 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 21

*Minnesota v. Olson*, 495 U.S. 91 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mitchell v. Wisconsin*, 139 S. Ct. 2525, 204 L. Ed. 2d 1040 (2019) . . . . . . . . . . . . . . . . . . . . 13

*Murray v. United States*, 487 U.S. 533 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Olmstead v. United States*, 277 U.S. 438 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Payton v. New York*, 445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Peng v. Mei Chin Penghu*, 335 F.3d 970 (9th Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Chan*, Superior Court of California, County of Santa Clara, Case No. B1898731
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Superior Court* (*Corbett*) (2017) 8 Cal.App.5th 670 . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Rakas v. Illinois* (1978) 439 U.S. 128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sandoval v. Las Vegas Police Dep't*, 756 F.3d 1154 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . 14, 15

*Segura v. United States*, 468 U.S. 796 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 29

*Sialoi v. City of San Diego*, 823 F.3d 1223 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Silverman v. United States*, 365 U.S. 505 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Texas v. Brown*, 460 U.S. 730,75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983) . . . . . . . . . . . . . . . 20

*Thomas v. Dillard*, 818 F.3d 864 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Black*, 482 F.3d 1035 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Chesher*, 678 F.2d 1353 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Duran-Orozco*, 192 F.3d 1277 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Flippin*, 924 F.2d 163 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Garcia* (*Garcia I*) 749 Fed.Appx. 516 (9th Cir. 2018) . . . . . . . . . . . . . 16, 18, 19

*United States v. Gonzalez-Martin*, 808 Fed. Appx. 465 (9th Cir. 2020) . . . . . . . . . . . . . . . 16, 19

*United States v. Gorman,* 859 F.3d 706 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Hill*, 55 F.3d 479 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Jacobs*, 986 F.2d 1231 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Javier Garcia* (*Garcia II*) 974 F.3D 1071, 2020 U.S. App. LEXIS 28650, *8 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Johns*, 891 F.2d 243 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Leon*, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States v. Leveringston*, 397 F.3d 1112 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Miller*, 769 F.2d 554 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Padilla* (1993) 508 U.S. 77. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Reid*, 226 F.3d 1020 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Russell*, 436 F.3d 1086 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Salas*, 879 F.2d 530 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Song Ja Cha*, 597 F.3d 995 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Stafford*, 416 F.3d 1068 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Stanert*, 762 F.2d 775, amended, 769 F.2d 1410 (9th Cir. 1985) . . . . . . . . . . 27

*United States v. Struckman*, 603 F. 3d 731 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 23

*United States v. Tomblin*, 46 F.3d 1369 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Wanless*, 882 F.2d 1459 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Wright*, 667 F.2d 793 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Welsh v. Wisconsin*, 466 U.S. 740 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wong Sun v. United States*, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Table of Statues**

*California Family Code*

    *Section 6218* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*California Penal Code*

    *Section 236* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    *Section 273.5* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    *Section 422* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    *Section 1524* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

    *Section 18250* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Federal Rules of Criminal Procedure*

    *Rule 12* et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States Code*

    *Chapter 18*

        *Section 922(g)(1)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        *Section 922(k)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    *Chapter 26*

        *Section 5861(d)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States Constitution*

*Fourth Amendment* . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-3, 12-14, 17, 20, 22, 26, 27, 29, 30

**Table of Other Authorities**

https://en.wikipedia.org/wiki/Emergency_service_response_code . . . . . . . . . . . . . . . . . . . . . . . . 5

https://web.stanford.edu/~reneeb/bill/n.radio.code.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendant Clarence P. Chan hereby presents this Memorandum in support of his Notice of Motion and Motion to Suppress Evidence, Quash Search Warrants, and Traverse pursuant to *Franks v. Delaware* 438 U.S. 154 (1978).

**I.**    <u>**INTRODUCTION**</u>

Mr. Chan, is charged by way of an Indictment, filed October 10, 2019, with the following: (1) *18 U.S.C. § 922(g)(1)*, felon in possession of a firearm and ammunition (Count 1); (2) *26 U.S.C. § 5861(d)*, possession of an unregistered firearm (Count 2); (3) *18 U.S.C. § 922(k)*, possession of a firearm with obliterated serial number (Count 3); and (4) *18 U.S.C. § 922(k)*, possession of body armor by a violent felon (Count 4). As demonstrated below, the Indictment is premised on evidence seized in violation of defendant's rights as guaranteed by the Fourth Amendment to the United States Constitution.

**A.**    <u>**Factual Summary**</u>

On May 28, 2018, members of the Palo Alto Police Department responded to a domestic dispute which is alleged to have occurred at defendant's home located at 3195 Alexis Drive, Palo Alto, California. The complaining witness called 911 from a neighbor's residence to allege her ex-boyfriend, Clarence Chan, assaulted her but assured dispatch that she was no longer with the him and no one, other than Mr. Chan, was at his residence. When the police arrived, Mr. Chan walked outside voluntarily, cooperatively and as directed. He was then taken into custody without incident. He too told police nobody was inside the residence. Despite the fact that all the information known and available to the police established no person remained at the home, let alone anyone who may have posed a danger to police or was in need of emergency aid, the police stormed in it without a warrant ostensibly for the purpose of conducting a "protective sweep."

Further, during this unlawful warrantless intrusion, the police looked in areas not accessible to a human body and allege to have seen "rifles, body armor and Pelican Cases" but state they were "not able to determine, at that time, if the firearms were prohibited or not." Nevertheless, they decided to seek search warrants. (See <u>Exhibit A</u> (first Search Warrant and supporting Affidavit at pp. 2-3); <u>Exhibit B</u> (second Search Warrant and supporting Affidavit at p.

2); and <u>Exhibit C</u> (Return and Inventory).)

**B.** **<u>Summary of Legal Grounds for Suppression</u>**

In order to redress the violations of Mr. Chan's Fourth Amendment rights, this Court is asked to suppress all tangible and intangible evidence seized, and the fruits thereof on the following grounds:

1.  The police unlawfully entered and searched his residence without a warrant or recognized exception to the warrant requirement in violation of his Fourth Amendment rights. (See Argument §§ IV.A. and IV.B., *infra*.)

2.  Assuming arguendo, this Court finds the government meets their burden justifying the warrantless entry, they will not be able to establish that the items described in order to obtain the warrant could have been observed in plain view. (See Argument § IV.C., *infra*.)

3.  Moreover, the tainted search warrants are invalid where the government cannot meet the additional burden proving the antecedent unlawful police actions did not prompt the application for or issuance of the warrants. (See Argument § IV.D., *infra*.)

Because the presumption that the warrantless police actions were unreasonable here applies, the burden falls on the government under Legal Grounds 1-3, *supra*. (See Argument § IV, *supra.*) Accordingly, if the government cannot present facts that would establish an applicable exception to the warrant requirement for the warrantless entry and search into Mr. Chan's residence suppression must be granted. Further, assuming arguendo the government opposes this Motion with factual assertions that could as a matter of law provide a recognized exception for the warrant requirement they must produce sufficient proof of these facts at an evidentiary hearing otherwise suppression is required under the Fourth Amendment.

4.  Assuming arguendo, the Court does not find the search warrants invalid based on the antecedent unlawful searches and seizures prompting the decision to seek and/or issue the warrants, the tainted information must be excised and affidavits retested resulting in a lack of probable cause on their face. Moreover, even without excising tainted information the first warrant is facially insufficient to establish probable cause to search, and the second warrant is thus also invalid where it would not have been sought or issued but for evidence observed and seized during the execution of the initial warrant. (See Argument § V, *infra*.)

5.  Alternatively, defendant moves to traverse the warrants and to hold a *Franks* hearing based on his preliminary showing made herein demonstrating the affiant deliberately, or at least recklessly, presented material false statements, misleading information and omitted key facts in applying for the search warrants.[1] (See Argument § VI, *infra*.)

---

[1] In addition to each of these grounds for suppression, law enforcement further

## II.     STATEMENT OF FACTS

### A.     Warrantless Police Actions on May 28, 2018

The following facts summarize those presented in Palo Alto Police Department ("PAPD") reports, video and audio recordings produced by the State. Transcripts of audio recordings of the events prior to the warrantless search of Mr. Chan's residence attached hereto and referenced below include: (1) Exhibit D (911 call to police dispatch); (2) Exhibit E (partial transcript of radio traffic, hereinafter "CAD audio");[2] (3) Exhibit F ("I/Dispatcher Event Information," hereinafter "CAD log"); and (4) Exhibit G (PAPD Officer Yolanda Clausen's body

violated Mr. Chan's Fourth Amendment rights by unlawfully exceeding the scope of the warrants by seizing seven computers and hard drives. (See Exhibit C at pp. 12-13, Items 63-69.) Neither warrant allowed for the seizure of any electronic items. (See Exhibit A, Search Warrant (only "Firearms and Ammunition[;]" (emphasis in original) and Exhibit B, Search Warrant (issuing Magistrate affirmatively crossed out and initialed "camera phones.").  Unlawfully seizing these unauthorized items further evidences the Palo Alto Police Department Officers' disregard of the Fourth Amendment and the need to apply the exclusionary rule with full force in this case.

Defendant, however, does not expand on this independent ground for suppression in the Argument sections below because based on the discovery furnished it does not appear these electronic items seized were searched, thus, he is informed and believes the government does not intend to introduce any evidence from these electronic items. Should this prove inaccurate, the defense asks the government to give notice forthwith in order to allow defendant to advance further arguments pertaining to the suppression electronic information. (See Federal Rule of Criminal Procedure, Rule 12(b)(4).)

[2] Please note that the CAD log entries made at 9:19:30 hours are duplicates of the same event information occurring at earlier times and, therefore, should be disregarded. (See Exhibit F at pp. 3-5, 9:19:30 hours.)

1    audio recording on May 28, 2018).

2         On May 28, 2018, at approximately 0852 hours, a 911 call was made by a complaining

3    witness to Palo Alto Police Department 911 Dispatch to report a domestic violence incident

4    involving her ex-boyfriend, Clarence Chan. (See, Exhibits D, E and F.) She reported that she had

5    placed the call from Mr. Chan's neighbors' residence and believed he was at his home located at

6    3195 Alexis Drive, Palo Alto. (See, Exhibit D at 2-3, 7-8, 10, 13-16, 19-20, 25; Exhibit E at 5;

7    Exhibit F at 1-3.)

8         According to the complaining witness, she arrived at Mr. Chan's home earlier that

9    morning to meet with him and give closure to their recent breakup. (See Exhibit D at 12, 27-28.)

10   During their discussion, he asked to see her cell phone to look for communications she may have

11   had with other men. (See Exhibit D at 12, 28.) She did not agree to give him her phone and

12   placed it in her back pocket. He then "tackled her down" in order to take her phone. (See, Exhibit

13   D at 1, 7, 12, 28-29; Exhibit E at 5.) She tried to get it back, but he ended up tossing it across the

14   street. (See Exhibit D at 1, 7, 12, 29.) She was able to retrieve it first, but he was able to get it

15   back after a struggle ensued during which he grabbed her neck and she tore his shirt. (See Exhibit

16   D at 13, 22, 29.) Thereafter, she followed him back to his residence and while in the backyard he

17   threatened to throw her phone in the pool. (See Exhibit D at 13, 22, 29.)

18        She ran to the neighbors who let her inside their house to use the phone and call 911. (See

19   Exhibit D at 1:25) As the complaining witness was crying, dispatch asked to speak to the

20   neighbor who reported she had no visible injuries and her cell phone had been left on her car.

21   (See, Exhibit D at 5, 8, 11-12; Exhibit E at 5;  Exhibit F at 2.)

22        The only other information available to the police when they arrived was the following:

23   (1) In response to the dispatcher's questions, the complaining witness said she does not know if

24   Mr. Chan has any weapons. (See Exhibit D at 3.) (2) The only prior abuse she mentioned, for

25   which no report was made, was that he had pushed her, stating he could kill her and the gardener

26   would help him bury her body in the backyard. (See Exhibit D at 23.) She did not report it as a

27   serious threat, and it was not included in the CAD log. (See Exhibit D at 23; Exhibits E and F.)

28   (3) The only history at the residence was a 2014 civil code enforcement call regarding a report

---

Motion to Suppress Memorandum
5:19-cr-00521-BLF-1                              4

that there may have been an electrical box on the north side of the house with guns. (See, e.g, Exhibit E at 4, 7:24 ("There was no history there, just a utility call"); Exhibit F at 3.) Further, the CAD does not include information showing Mr. Chan had any prior felony convictions. (See, Exhibits E and F.)

Officers responded, initially setting up a staging area down the street. (See, Exhibit E at 3, 6; Exhibit F at 4-5.) By approximately 9:26 a.m., four patrol vehicles and seven uniformed armed officers arrived outside the residence and set up a barricade. (See, Exhibit E at 6; Exhibit F at 5.)

The police were "treating it like a DV, and they're going to attempt to call the suspect out to them." (See, Exhibit E at 6; Exhibit F at 1 ("Type: 242 - Battery") and *id.* at 5.) Officer Souza contacted Mr. Chan on his phone, and he immediately complied with her request to exit the residence as directed and was securely detained in handcuffs by about 9:27. (See, Exhibit D at 26; Exhibit E at 7; Exhibit F at 5; Exhibit G at 2-4.)

At about 9:28, after Mr. Chan was in custody, Officers Miller, Seghetti, King and Sergeant Phillip entered and searched his home without a warrant. (See, Exhibit E at 7:19 ("going to clear his house to make sure it's Code 4 inside"),[3] *id.* at 8; Exhibit F at 5 (9:28:20 "clearing house"); Exhibit G at 3:24-27 ("We'll just take a look and make sure everything's good ... If other people are in, let's have a walk through.").) Strangely, pursuant to Officer Miller's report, they "conducted a protective sweep of the residence, because the victim had stated her friend was also inside the house."

The complaining witness, however, *never* made this statement. Instead, she told dispatch multiple times no one, other than possibly Mr. Chan, was inside his house, and any initial inexplicable confusion the dispatcher may have had which is only noted on the log and not the audio, was cleared up within minutes and well before the police entered the property without a

---

[3] Code 4 Code 4 generally means: "No further assistance is needed" (https://web.stanford.edu/~reneeb/bill/n.radio.code.html); "to alert units to discontinue altogether – e.g., because the suspect is in custody or there are already enough officers on scene – they would likely say they are 'code 4.'" (https://en.wikipedia.org/wiki/Emergency_service_response_code).

warrant. (See, <u>Exhibit D</u> at 11:7-10 ("DSP: Is there anybody else home with him that you know

of? JA: No. DSP: Any children? Anything like that? JA: No. No. No."), *id.* at 12:5-8 ("DSP: No

one's in the house that he's at? JA: Yep. DSP: OK. JA: NO. NO one."); <u>Exhibit E</u> at 5, 8; <u>Exhibit</u>

<u>F</u> (CAD log) at 2 (09:01:39 hours: "He also has her friend"), (09:07:22 hours: "Noone but

Clarence should be in the house that he is in"), and *id.* at 3 (09:14:03 hours: "He has her phone

not 'friend'").)

After exiting, defendant also confirmed to police that no person remained inside the

residence. (See <u>Exhibit G</u> at 3:13-17, 3:26 ("MPO: OK. Uh, who else is in the house? ... CC: Just

me. MPO: Is anyone else in the house? CC: No. The dog. ... CC: No, no. It's just... just me."), *id.*

at 5:3-9 ("CC: There's no one else in the house, MPO: There's no one else in there? CC:

[unintell] MPO: Was there somebody earlier? A friend or something? CC: Uh... My uh, ex-

girlfriend. [unintell] MPO: OK.")

Nevertheless, four officers entered his residence at about 9:28 a.m. without a warrant

despite the indisputable facts that the complaining witness was in a safe location with the

neighbors, Mr. Chan was securely in police custody and there was no information to support a

reasonable belief anyone was inside the residence, let alone a person who may pose a danger to

the officers' safety. They remained inside the property searching for approximately thirteen

minutes. As shown by the contemporaneous police recordings, these facts are indisputable.

Based on observations made during the warrantless intrusions, including, *possibly*

prohibited "rifles, body armor and Pelican Cases" the police decided to apply for a search

warrant. Neither the reports nor search warrant affidavits, discussed *infra*, state that these items

were seen in "plain view."

**B.   Search Warrants**

**1. First Search Warrant (Exhibit A)**

On May 28, 2018, following the warrantless police actions discussed above, PAPD

Sergeant Adrienne Moore applied for a search warrant for the residence, which was issued by

Santa Clara County Superior Court Judge Persky that same day and executed the next day. (See

<u>Exhibit A</u>, Search Warrant.) The warrant was based on the following assertions made in Sergeant

1   Moore's Affidavit, Statement of Probable Cause. (See Exhibit A, Affidavit at 2-3.)

2   On May 28, 2018, the complaining witness contacted police dispatch. She said she had

3   gone to Mr. Chan's residence "to finalize a break up[.]" While there, he "took her cell phone,

4   placed hands around her neck, in attempts at strangling her." She further said he "threatened to

5   kill her and bury her in the back yard of his home." "He has weapons and that she has seen the

6   weapons." He also "calls and texts her incessantly."

7   The police responded, ordering Mr. Chan "out of his home because his criminal history

8   indicated he has a history with firearms violations and assault with a deadly weapon, a firearm."

9   "Police then conducted a protective search of the home because it was unknown if there were

10   parties in the home in need of assistance."

11   During the "protective sweep" police saw "rifles, body armor and Pelican Cases." The

12   suspect is a convicted felon, and thus, prohibited from owning or possessing firearms. Computer

13   checks showed he does not have firearms registered to him. The affiant "was advised by Sergeant

14   Brian Philip, a SWAT Commander, and a hunter, that he ... saw at least four firearms during the

15   protective search he conducted after Suspect Chan exited the home. Sergeant Philip did not

16   manipulate any of the firearms, so he was not able to determine, at that time, if the firearms were

17   prohibited or not. He noted that the rifles were black in color, without orange training tip

18   markings."

19   Mr. Chan was arrested and booked for "PC 273.5 domestic violence, PC 422 terrorist

20   threats, and PC 236, false imprisonment." He "refused to allow police to retrieve his weapons

21   when he was presented with a Gun Violence Restraining order, on 28 May 2018, at 1315 hrs."

22   **2.  Second Search Warrant (Exhibit B)**

23   Based on evidence observed during the execution of the search warrant, a second warrant

24   was issued on May 29, 2018 (1430 hours) by Santa Clara Superior Court Judge Danner to expand

25   the scope of the search to include ammunition, high capacity magazines, firearm accessories and

26   documents/images related thereto. (See Exhibit B, Search Warrant.) The search pursuant to the

27   first warrant was ongoing at the time the second warrant was signed and executed.

28   Affiant Moore's Statement of Probable Cause supporting this second warrant repeated

verbatim her first affidavit with the following additional information:

    1.    Magazines, ammunition, firearm parts, long guns, hand guns, body armor and prohibited fireworks were found at the residence [during the execution of the warrant]; and

    2.    Pursuant to a follow-up interview with the complaining witness on May 29th, she told Officer Clausen that (a) Mr. Chan "buys firearms parts, assembles firearms and sells them to 'government agencies' ... [and] "has shown her pictures of weapons he has sold to people[;]" and (b) He said "there is a safe concealed beneath the back deck" at his house.

(See Exhibit B, Affidavit at 3.)

**C.**    **False Statements and Omissions**

Discovery furnished by the State, including, Palo Alto Police Department reports, audio of the 911 call, communication tapes and logs (CAD), photographs and police video and audio recordings, show the following false statements, misleading information and omissions in the search warrant Affidavits, Statements of Probable Cause:

1. The affiant falsely stated the "[p]olice then conducted a protective search of the home because it was unknown if there were parties in the home in need of assistance." (See, Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3.) Instead, the complaining witness told dispatch multiple times there was nobody other than possibly Mr. Chan inside, and after he exited and was placed in custody he too told police no one was inside his residence. Accordingly, all the information known to the police before their entry was that there was no one inside. (See, Exhibit D at 11-13, 26; Exhibit E at 5, 7-8, 15-16; Exhibit F at 2-3; Exhibit G at 2-4.)

2. Assuming arguendo there was a reasonable basis to believe someone was inside the residence, the affidavit omitted the facts that there was absolutely no information gathered before entering that anyone was in need of "emergency aid." Nor was there any information to support a non-asserted belief there was a need for a "protective sweep" to protect officers' safety. In fact, there were at least four patrol vehicle and seven uniformed armed officers who had set up a staging area and barricade outside the residence that was set back off the street at the end of a long driveway making it nearly impossible for someone inside to pose a threat. (See, e.g., Exhibit E at 3, 6; Exhibit F at 4-5.)

3. The affiant's statement that Mr. Chan was asked to exit "his home because his criminal

1  history indicated he has a history with firearms violations and assault with a deadly weapon, a

2  firearm" is false. (See, Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3.) This criminal history

3  is not reflected on the CAD, thus, there is no evidence the police were aware of this history until

4  after he was placed in custody and the warrantless search conducted. (See, Exhibit E at 4; Exhibit

5  F at 3. Indeed, as evidenced from the CAD, the only reason the police telephoned him to ask that

6  he exit the resident was because of the domestic violence report. (See, Exhibit E at 6, Exhibit F at

7  5.)

8       4. The complaining witness did not report to dispatch that he "has weapons, and that she

9  has seen the weapons." (See, Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3.) Rather, she told

10  dispatch that she did not know whether he had any weapons. (See Exhibit D at 3.)

11       5. The affiant misled the court by including the complaining witness's inflammatory

12  uncorroborated statement that he said he could "kill her and bury her in the back yard[.]" (See,

13  Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3.) Even if this statement could be deemed

14  sufficiently reliable, no criminal threats were made on the date of the incident they had responded

15  to and this statement referenced a prior occasion for which no report was made; and she did not

16  take it seriously at the time. (Exhibit D at 23; see also Exhibit H (transcript Officer Clausen's

17  follow-up interview with the complaining witness on May 29, 2018).

18       6. The complaining witness did not report that defendant had "placed hands around her

19  neck, in attempts at strangling her." (See, Exhibit D at 13, 22, 29; Exhibit G at 32-34.) Instead,

20  she alleged he did so to take her phone because he was jealous and wanted to see her

21  communications. (See, Exhibit D at 1, 7, 12-13, 22, 28-29; Exhibit G at 28, 32-33, 36, 68.)

22  Further on May 29th, prior to the issuance of the second warrant, she said it was "only couple

23  seconds, then he let go[.]" (See Exhibit H at 4.)

24       7. The affiant omitted the fact that dispatch was told defendant had returned the

25  complaining witness's phone by placing it on her car, and another person at the neighbor's

26  residence said at that time he appeared calm. (See Exhibit G at 22, 44-45, 59, 61, 64, 66.)

27       8. Also missing from the affidavit is the minimal nature of the complaining witness's

28  reported injuries. The neighbor told dispatch that she had no visible injuries, and the officers only

observed minor abrasions and redness. (See, Exhibit D at 5; Exhibit E at 5; Exhibit F at 2.) When the police went to the neighbors to speak with her after the incident, the only visible injury was a minor abrasion on her knee. (See, Exhibit G at 17, 21; Exhibit H at 4-5.) The affidavit omitted that Mr. Chan's shirt was ripped and he had visible scratches the complaining witness denied inflicting. (See Exhibit G at 5-7, 30-31.) Also during her interview on May 29th, prior to the issuance of the second warrant, she said "I felt like I was biting him" while trying to get her phone back. (See Exhibit H at 2.)

9. Although the affiant states the complaining witness says he "calls and texts her incessantly[,]" he failed to disclose that Mr. Chan offered to let the police see their communications on his phone almost immediately after being taken into custody. (See Exhibit G at 5, 7.)

10. Contrary to the affidavit, Mr. Chan did not refuse to allow police to retrieve firearms from his residence pursuant to the Firearm EPO as stated in the affidavits. (See, Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3.) Mr. Chan was not given a choice or opportunity to relinquish them. It was instead because he was in custody, and thus not immediately available to surrender the items personally that he personally could not do so. This is hardly giving him an option to relinquish firearms as required by law. Additionally, Moore did not properly admonish him, explain or honor his choices under the Firearm EPO, including, for example, as stated on the order: An opportunity to seek "advice of an attorney as to any matter connected with the order. The attorney should be consulted promptly so that the attorney may assist you in any matter connected with the order." (See also Argument § V, *infra.*)

11. Although Mr. Chan was booked for domestic violence, criminal threats and false imprisonment (see, Exhibit A, Affidavit at p. 2, Exhibit B, Affidavit at p. 3), the police fabricated probable cause. First, as shown above, the only mentioned threat was alleged to have been made months earlier and at the time was not taken seriously. (See item 5, *supra.*) Second, it was clear that Mr. Chan never prevented the complaining witness from leaving, but instead she had every opportunity to do so and even went back onto the property after they had both run across the street and he asked her to leave. (See, Exhibit D at 13, 29; Exhibit G at 20, 37, 66.) Her main

concern about leaving was she needed her phone so as to not miss a call from work. (See, e.g., Exhibit D at 12, 29; Exhibit G at 66). He did not take her phone to prevent her from calling the police (see Exhibit G at 28, 37) and had returned it before the police arrived (see Item 6\7, *supra*). Mr. Chan was not charged with false imprisonment and not held to answer on the criminal threat allegation following the preliminary hearing held in the State case. (See Superior Court of California, County of Santa Clara, Case No. B1898731.)

12. In addition, the statements made by the complaining witness on May 29th, added to the second search warrant affidavit, were not credible. (See Exhibit B, Affidavit at 3.) Moore omits facts demonstrating the unreliability of the witness necessary to giving an accurate report to the magistrate court. (See Exhibit B, Affidavit at p. 3.) First, regarding the information provided about weapons, her statement in the affidavit that he buys parts and assembles firearms, and has shown her pictures, was based on information defendant allegedly told her or she may have overheard, but not to which she was a percipient witness. Second, although from her statements it may be said she reported having seen parts and possibly firearms, defendant told her they were fake and she had no basis to suspect otherwise. She had no basis of knowledge to distinguish between items which are prohibited and those which are not. Third, the only photo she said defendant showed her was of a gun, not what he identified as selling to others; nor was she able to provide any information to support the picture he sent her indicated the firearm belonged to him or was in his possession. (See Exhibit H at 11, 16-18, 19 ("he tells me ... I didn't see any here yet"), *id.* at 20-27, 32-39.) And in regard to her statement included in the affidavit that he has a safe under his deck, the affidavit omitted that this statement was only based on what Mr. Chan allegedly mentioned to her once, that it was left there by the previous owner and he could not move it so he simply built a deck over it. (Exhibit H at 20-21.) The affidavit was misleading in that it gave a sinister impression that he had intentionally built a secret hidden safe under his deck.

13. Further information demonstrating the complaining witness's lack of credibility and conflicting statements were omitted, including, for example: (1) she said she did not know if defendant had weapons (see Exhibit D at 3), but the next day told police he did (see Exhibit H at

11, 16-18, 19-27, 32-39); (2) on the date of the incident, she denied having done anything to him other than ripping his shirt during the struggle, despite the fact he had many visible scratches (see, e.g., Exhibit G at 31), then the following day she admitted to possibly biting him (see Exhibit H at 2); and (3) on May 28th she told police she saved everything on her phone so she could apply for a restraining order (see Exhibit D at 22), but when asked to show the officer specific texts and photos the next day she said she had deleted many of their recent communications (see Exhibit H at 11).

Accordingly, as argued below, defendant has made a sufficient preliminary showing to entitle him to a hearing under *Franks* and traversal of the warrants. (See Argument § VI, *infra.*)

## III.   MR. CHAN HAS A REASONABLE EXPECTATION OF PRIVACY TO CHALLENGE THE LEGALITY OF THE SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A defendant who has a property or possessory interest in the place searched or the items seized has a legitimate expectation of privacy sufficient to invoke the Fourth Amendment's protections. *United States v. Padilla* (1993) 508 U.S. 77, 81-82; *Rakas v. Illinois* (1978) 439 U.S. 128, 148.

A person's expectation of privacy is at its height in ones home. *Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.") (citations omitted); *Payton v. New York*, 445 U.S. 573, 585 (1980) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed") (citation omitted); *Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core stands the right of a [person] to retreat into his [or her] own home and there be free from unreasonable governmental intrusion.").

The searches and seizures here challenged took place at Mr. Chan's home. Accordingly, his privacy interest in this property is not only reasonable, but also that which society holds most sacred, thus, he is entitled to invoke protections guaranteed under the Fourth Amendment.

1   **IV.**    **THE WARRANTLESS UNLAWFUL ENTRY AND SEARCH OF MR. CHAN'S**
                **HOME IN VIOLATION OF THE FOURTH AMENDMENT REQUIRES**

2                 **SUPPRESSION OF THE EVIDENCE SEIZED IN THIS CASE.**

3         Warrantless police actions, including the entry and search of Mr. Chan's home, are

4 presumptively unreasonable and the government cannot overcome their burden under the facts

5 and circumstances of this case to justify their actions, thus, the police violated his constitutional

6 rights guaranteed under the Fourth Amendment. There is no legally recognized exception to the

7 warrant requirement authorizing this warrantless police action. The only justification advanced

8 by police, i.e. to conduct a "protective sweep," does not apply to the circumstances in this case.

9 Nor would the "emergency aid exception" apply. The entry and search of Mr. Chan's residence

10 was therefore a clear and egregious violation of his Fourth Amendment rights. Assuming

11 arguendo, the Court finds otherwise, the government cannot meet their additional burden to show

12 the evidence relied upon to obtain the warrants was seen in "plain view." Accordingly, as

13 detailed below, the search warrants are invalid as the government will not be able to meet their

14 burden of showing the antecedent unlawful warrantless entry and searches did not prompt the

15 application for or issuance of the warrants.

16         **A.**    **The Warrantless Entry and Search is Presumptively Unreasonable.**

17         "[S]earches and seizures inside a home without a warrant are presumptively

18 unreasonable" under the Fourth Amendment. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)

19 (internal quotations omitted); see also, *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2543, 204 L. Ed.

20 2d 1040, 1057 (2019) ("A warrant ... serves as a check against searches that violate the Fourth

21 Amendment by ensuring that a police officer is not made the sole interpreter of the Constitution's

22 protections."); *Payton v. New Yor*k, 445 U.S. 573, 586 (1980); *Coolidge v. New Hampshire*, 403

23 U.S. 443, 455 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967) (a search conducted

24 without a warrant is "per se unreasonable under the Fourth Amendment—subject only to a few

25 specifically established and well-delineated exceptions"); *Sialoi v. City of San Diego*, 823 F.3d

26 1223, 1237 (9th Cir. 2016). The government therefore bears the burden of proof establishing

27 reasonableness required under the Fourth Amendment, otherwise if they cannot the evidence

28 seized must be suppressed. See, e.g., *Coolidge, supra,* 403 U.S. at 455.

1    In the present case, police entered and searched Mr. Chan's residence without a warrant,

2    thus, the government must assert facts sufficient to justify the warrantless police actions

3    otherwise the initial entry and search prior to obtaining a warrant was unreasonable and

4    conducted in violation of Mr. Chan's Fourth Amendment rights. Assuming such facts are alleged

5    in response to this Motion, the government must then be prepared to produce credible evidence

6    sufficient to demonstrate the facts and justify the police actions at an evidentiary hearing, and

7    their failure to do so will require suppression of all evidence seized in this case.

8    **B.    No Exception, Including Exigent Circumstances, Applies.**

9    "[E]xceptions to the warrant requirement are few in number and carefully delineated, and

10   that the police bear a heavy burden when attempting to demonstrate an urgent need that might

11   justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749-750 (1984)

12   (internal quotations and citation omitted); *Sandoval v. Las Vegas Police Dep't*, 756 F.3d 1154,

13   1161 (9th Cir. 2014) (The exceptions are "'narrow and their boundaries are rigorously guarded.'")

14   (quoting *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009)). In order to overcome the

15   presumption and make a lawful entry into a home without a warrant, the government must

16   produce evidence demonstrating "probable cause and exigent circumstances or an emergency

17   sufficient to justify the entry." *Sandoval, supra*, 756 F.3d at 1161 (citing, *United States v.

18   Struckman*, 603 F. 3d 731, 738 (9th Cir. 2010) and *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)

19   (per curiam); see also *Payton, supra,* 445 U.S. at 590.

20   Proceeding without a warrant into a private residence based on exigent circumstances

21   may only be justified where there is probable cause a crime was committed and a sufficiently

22   objectively reasonable basis to believe the entry was necessitated by the hot pursuit of a fleeing

23   felon, imminent destruction of evidence, need to prevent a suspect's escape, or the risk of danger

24   to the police or other persons inside or outside the building. *Minnesota v. Olson*, 495 U.S. 91,

25   100-101 (1990) (warrant for the arrest of a getaway driver of a felony murder who was inside the

26   house with others present found insufficient where officers had surrounded the house and "[i]t

27   was evident [he] was going nowhere"); *Payton, supra*, 445 U.S. at 587-588 ("absent exigent

28   circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even

1  when a felony has been committed and there is probable cause to believe that incriminating

2  evidence will be found within") (footnote omitted).

3        Moreover, the circumstances of each case must be closely scrutinized in order to assure

4  the warrantless intrusion was not a pretext to look for evidence related to a crime and is in fact

5  justified at the time of the entry. The need must be "imminent" and "cannot be created by the

6  officers[.]" *Kentucky v. King*, 563 U.S. 452, 460, 462 (2011); *Brigham v. Stuart*, 547 U.S. 398,

7  404  (2006) (These determination must be "objectively reasonable" and "based upon the facts as

8  known to the officers at that time."); *King, supra,* 563 U.S. at 466-471; *Sandoval, supra,* 756

9  F.3d at 1164 ("government bears the burden of showing specific and articulable facts to justify

10  invoking the exception") (internal quotations and citation omitted); *Struckman, supra*, 603 F.3d

11  at 738 ("The police must 'show that a warrant could not have been obtained in time,'(internal

12  quotation marks omitted), and must demonstrate 'specific and articulable facts to justify the

13  finding' of either exigent circumstance or emergency.") (citation omitted).

14        In the present case, the only exception advanced by police was to conduct a "protective

15  sweep because it was unknown if there were parties in the home in need of assistance." (See, e.g.,

16  Exhibit A, Affidavit at 2; Exhibit B, Affidavit at p. 3.)

17                        **1.        Protective Sweep**

18        In the seminal case of *Maryland v. Buie*, 494 U.S. 325, 327-328 (1990), the United States

19  Supreme Court vacated the judgment and remanded for application of the standards for a

20  "protective sweep" as were determined to be constitutionally required. In *Buie*, the officers had

21  entered the home to execute a felony arrest warrant when the suspect emerged from his basement

22  and he was placed under arrest. *Id.* at 328. Immediately thereafter, one of the officers entered the

23  basement to see if there was anyone else present when he saw clothing in plain view that

24  matched the description of the suspect at the scene of the crime. *Ibid.*

25        Balancing the suspect's reasonable expectation of privacy against the risk to officer safety

26  from unknown persons in the home (*id.* at 331-33), the Supreme Court held as "incident to the

27  arrest" the officers could as a precautionary matter "look in closets and other spaces immediately

28  adjoining the place of arrest from which an attack could immediately be launched." *Id.* at 334.

1    Beyond those immediate spaces, however, police could not conduct a protective sweep absent

2    additional "articulable facts which, taken together with the rational inferences from those facts,

3    would warrant a reasonably prudent officer in believing that the area to be swept harbors an

4    individual posing a danger to those on the arrest scene." *Ibid.* In addition, the sweep must be

5    limited to "a closer inspection of those spaces where a person may be found" and last no longer

6    than necessary to allay the reasonable suspicion of danger. *Id.* at 335-336.

7        The Ninth Circuit subsequently emphasized the "protective sweep" justification *only*

8    applies if police are on the premises to execute a valid arrest warrant. *Sialoi, supra,* 823 F.3d at

9    1237 (emphasis added). As the *Sialoi* court explained:

10       The issue in *Buie* was not whether the officers could enter the residence but instead
         whether, having obtained judicial authorization to enter the home, the officers were
11       justified in continuing to search it after they had arrested the target of the arrest warrant.
         *Id. Buie* thus offers no independent justification for entry of a residence, but only
12       addresses the question of what the police may do once lawfully inside. See *United States
         v. Flippin*, 924 F.2d 163, 165 (9th Cir. 1991) (noting that the "protective search was
13       upheld in *Buie* because the police had a legitimate right to enter the home").

14       *Id.* at 1237.

15       The court held not only was there no basis to consider the issue of whether the officers

16   were lawfully allowed to conduct a protective sweep where lacking an arrest warrant, but "even

17   if *Buie* applied to the situation before us, the facts ... do not suggest that the apartment

18   'harbor[ed] an individual posing a danger to those on the arrest scene.'" *Ibid.,* quoting, *Buie,* 494

19   U.S. at 334. Accordingly, "regardless of the duration" of the search the warrantless entry itself

20   was found unconstitutional. *Id.* at 1238; see also, *United States v. Gonzalez-Martin*, 808 Fed.

21   Appx. 465, 466 (9th Cir. 2020) ("Even though, as the government argues, the officers had no way

22   to rule out that someone else was inside the house, the Supreme Court has rejected exceptions to

23   the warrant requirement based on 'the danger that inheres' in encounters with criminals or

24   violent crimes; rather, officers must have 'reasonable, individualized suspicion.'") (citing, *Buie*,

25   494 U.S. at 334 n.2); *United States v. Garcia* (*Garcia I*) 749 Fed.Appx. 516, 519-520 (9th Cir.

26   2018) (Finding the exception inapplicable where the following evidence failed "to support a

27   reasonable suspicion that *any* person remained in the unit, much less a person posing danger to

28   the officers[:]" ... "(1) a possibly armed individual had run into the unit [who had been running

1  from police and failed to comply with their orders], (2) a frightened woman had come out, (3)

2  both officers and bystanders could potentially be in the line of fire, and (4) suspects fleeing police

3  sometimes run to join dangerous accomplices[,]" as well as the fact that they were in a high-

4  crime area.) (emphasis in original) (citations omitted); *United States v. Reid*, 226 F.3d 1020,

5  1027 (9th Cir. 2000) (search not justified as a protective sweep where the subject was detained,

6  but not arrested, in the back of the apartment; and, additionally because the government failed to

7  present facts demonstrating "that a reasonably prudent officer would have believed that the

8  apartment harbored an individual").

9       In the present case, as shown above, this exception has no application where the officers

10  were not at the premises to execute an arrest warrant. Moreover, even if there to effectuate an

11  arrest, the officers do not allege a belief that the residence harbored an individual posing danger

12  to them or they feared for their safety, and certainly there is no objective evidence that can satisfy

13  this requirement. Also, the government cannot show the search was "narrowly confined to a

14  cursory visual inspection of those places in which a person might be hiding." *Buie, supra*, 494

15  U.S. at 327. Accordingly, the protective sweep justification offered by the police is without

16  merit.

17                          **2.    Emergency Aid**

18       Although the only basis given by the police for the unlawful entry was to conduct a

19  "protective sweep," it is anticipated the government may alternatively advance the "emergency

20  aid" exception to attempt to justify law enforcement's warrantless entry. Like the protective

21  sweep, however, where there is no basis to support a reasonable belief anyone was inside the

22  residence, let alone someone in need of emergency assistance, this exception cannot apply.

23  Moreover, assuming arguendo that law enforcement's warrantless entry could be justified under

24  the Fourth Amendment, the Palo Alto Police Department Officers violated the limited scope

25  required for application of the emergency aid exception.

26       "The emergency aid exception typically has been understood to permit law enforcement

27  officers to enter a home without a warrant to render emergency assistance to an injured occupant

28  or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403

1  (2006) (internal citations omitted). The exception is "narrow" and its boundaries "rigorously

2  guarded." *Bonivert v. City of Clarkston*, 883 F.3d 865, 877 (9th Cir. 2018) (quoting *United States*

3  *v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005)). To assess whether the Government has

4  satisfied the emergency exception, the Ninth Circuit uses "a two-pronged test that asks whether:

5  (1) considering the totality of the circumstances, law enforcement had an objectively reasonable

6  basis for concluding that there was an immediate need to protect others or themselves from

7  serious harm; and (2) the search's scope and manner were reasonable to meet the need." *United*

8  *States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008).

9         Regarding the first prong, there was no basis for any belief there was anyone left inside

10  the residence in need of emergency help. There is no authority that supports a justification for the

11  police to enter a residence in response to a domestic violence call where both the suspect and

12  only alleged victim are securely outside the residence with the police before the unlawful entry.

13  See, e.g., *Bonivert, supra,* 883 F.3d at 877 ("Viewing the facts in the light most favorable to

14  Bonivert, there were simply no circumstances pointing to an actual or imminent injury inside the

15  home."); *Thomas v. Dillard*, 818 F.3d 864, 882 (9th Cir. 2016) ("We have never suggested that a

16  suspicion of 'domestic violence' alone provides sufficient justification for a given police

17  intrusion.") (citation omitted); *United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2007)

18  (holding a warrantless entry into a man's apartment was justified in the interest of the welfare of a

19  domestic abuse victim who had called 911, reporting that he had beaten her up in the apartment,

20  had a gun, and the police reasonably believed she might be inside and badly injured); see also

21  *Garcia I, supra,* 749 Fed.Appx. at 519 ("significantly, any potential danger associated with [the

22  suspect's] presence inside the house dissipated when ... taken into custody outside of the house,

23  prior to the officers' entry") (citations omitted). Moreover, even if there was a suspicion someone

24  was remaining inside the residence in need of help, as stated in *Garcia, I, supra*:

25         [I]f police officers otherwise lack reasonable grounds to believe there is an emergency,'
       they must 'take additional steps to determine whether there is an emergency that justifies
26     entry in the first place.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009)
       (alterations omitted) (quoting *United States v. Russell*, 436 F.3d 1086, 1092 (9th Cir.
27     2006)). While the officers here asked the young boy to identify Nevarez, they never asked
       anybody whether there were individuals inside requiring immediate assistance, in part,
28     apparently, because they assumed that the residents might lie. Such an "inflexible

assumption" cannot serve as a substitute for reasonable grounds. *Bonivert*, 883 F.3d at 878. Having failed to take additional steps to determine whether there was an emergency at hand—and without any other facts reasonably suggesting as much—the officers' entry was not justified under the emergency aid exception.

*Ibid.*

The present case stands in stark contrast to any other case which has applied the emergency aid exception. As with the protective sweep exception, fatal to the application of the emergency aid exception is the lack of specific and articulable facts required to support a reasonable belief that *any* person remained in the home, much less a person posing danger or in need of emergency aid. Instead, all the information the police had established that no one remained inside the home prior to their warrantless entry.

Here the officers were told no one was in the home by multiple people on multiple occasions and had no reason to believe these reports were false. Prior to the police entering his house, Mr. Chan had voluntarily exited, fully cooperated and was securely in police custody. The complainant was safely at the neighbors' home prior to their arrival. Moreover, assuming arguendo there was a credible belief that someone remained inside Mr. Chan's home, there was no indication whatsoever that the person was in need of emergency assistance, and the officers certainly could have taken further and less intrusive steps to confirm or dispel such beliefs, as provided for under *Garcia I, supra,* other than conducting a warrantless entry and search. Accordingly, the government cannot satisfy its burden establishing the totality of the circumstances provided a reasonable objective belief there was a person inside the residence in need of emergency assistance to justify the warrantless intrusions.

The government also cannot meet the second prong requiring them to demonstrate the search's manner and scope of the entry and search were reasonable to meet the need of rendering aid. The manner in which they entered, and thereafter remained inside and searched places were unnecessary to dispel any assertion there may be someone inside in need of emergency aid. See also, *Gonzalez-Martin, supra*, 808 Fed. Appx. at 466 (Although police lawfully entered the entryway to address the person's medical emergency, "neither the police officers' entry into the living room of the residence (from where an officer could see a pistol on a table in the kitchen), nor the search of other rooms in the house and the garage, was excepted from the warrant

requirement.") (citing, *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); see also Argument § III.C, *infra.*)

Therefore, the government cannot meet both prongs required to apply this narrow exception.

***

Accordingly, the officers lacked an objectively reasonable basis required to dispense with a warrant and justify the warrantless intrusions in violation of defendant's Fourth Amendment rights.

**C.      Plain View Doctrine Does Not Apply.**

For the plain view doctrine to apply the government must first prove the police were lawfully on the premises at the time the observations are made. *Coolidge*, 403 U.S. at 466. In *United States v. Miller*, 769 F.2d 554, 556-557 (9th Cir. 1985), the Ninth Circuit articulated this threshold requirement, as well as additional conditions the government must establish before the application of the plain view doctrine is permitted:

> [T]he police may under some circumstances seize evidence in plain view without a warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971) (plurality opinion); *United States v. Chesher*, 678 F.2d 1353, 1356 (9th Cir. 1982). Plain view seizure is permitted when three requirements are met. First, the officer must have a prior justification for the intrusion that allowed him to view plainly the evidence. *Coolidge*, 403 U.S. at 466. Second, the discovery of the evidence must be inadvertent. *Id.* at 469. Third, it must be "immediately apparent to the police that they have [incriminating] evidence before them." *Id.* at 466; see also *Chesher*, 678 F.2d at 1356; *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). ... Probable cause arises when the available facts would warrant a reasonably cautious person's belief that the items in plain view are useful as evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983).

Defendant holds the government to their burden of establishing all three of these requirements are met before the "plain view" doctrine can be applied to justify the officers' observations while inside Mr. Chan's residence without a warrant, and submits, they will not be able to do so in this case.

As shown above, the officers had no lawful justification for the entry into the residence, thus, the inquiry should here end. Moreover, assuming arguendo the Court finds the burden to justify the warrantless entry is met, the government must also produce evidence to establish while inside they limited their search to "inspection of those spaces where a person may be

found" and lasted no longer than necessary to allay the reasonable suspicion of danger. *Buie, supra,* 494 U.S. at 335-336. Any plain view observations made while acting outside the scope of a lawful protective sweep must also be suppressed.

Assuming arguendo, the first requirement is met, the government must also produce evidence sufficient to demonstrate the discovery of the items while inside was both "inadvertent" and their incriminating nature "immediately apparent." See *Miller, supra,* at 556-557. Even the search warrant affidavits do not allege the items were seen in "plain view" and state the incriminating nature of the firearms was not "immediately apparent". (See Exhibit A, Affidavit at 2; Exhibit B, Affidavit at 3 ("Sergeant Philip ... was not able to determine at that time, if the firearms were prohibited or not").

Accordingly, the plain view doctrine does not apply.

### D.   The Warrants Are Not Independent of the Antecedent Fourth Amendment Violations.

The government also has the burden of proving the police obtained the search warrant independent of the prior illegality. *Segura v. United States*, 468 U.S. 796, 798 (1984). That is, a search warrant can only serve to purge the taint of evidence seized unlawfully if the government establishes the illegal search or seizure did not: (1) prompt the decision to seek the warrant, or (2) affect the magistrate's decision to issue the warrant. *Murray v. United States*, 487 U.S. 533, 542-543 (1988) ("what counts is whether the actual illegal search had any effect in producing the warrant"); *Segura, supra*, 468 U.S. at 798; *United States v. Javier Garcia* (*Garcia II*) 974 F.3D 1071, 2020 U.S. App. LEXIS 28650, *8 (9th Cir. 2020) ("Had the officers discovered the evidence at issue during this first search, there is no doubt that suppression would be required under the exclusionary rule."); *id.* at *14  ("the attenuation doctrine does not apply when an officer's decision to exercise his discretionary authority is 'significantly direct[ed]' by information learned during an unlawful search") (citing, *United States v. Gorman,* 859 F.3d 706, 716 (9th Cir. 2017), quoting *United States v. Johns,* 891 F.2d 243, 245 (9th Cir. 1989)); *United States v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir. 1999) (remanded for evidentiary hearing to determine if agents would not have sought the warrant absent their preceding unlawful search despite the fact there was sufficient information to support the warrant apart from the illegal

search); *United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995) (reversed and remanded because the district court failed to explicitly find whether the officers would have sought a warrant if they had not conducted the earlier search); *United States v. Wanless*, 882 F.2d 1459, 1465 (9th Cir. 1989); *United States v. Salas*, 879 F.2d 530, 539 (9th Cir. 1989); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987); *United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005) (showing of independent probable cause insufficient)*.*

In the present case, the illegal warrantless entry and search of Mr. Chan's residence formed a substantial, immovable part of the affidavits upon which these search warrants were sought and issued. The affiant did not begin to prepare nor decide to seek a search warrant prior to these antecedent constitutional violations. In fact, the affidavits on their face exploited and relied on the flagrant unlawful antecedent warrantless police actions and tainted evidence allegedly observed while inside. (See, Exhibit A, Affidavit at p. 2; Exhibit B, Affidavit at p. 3.) In effect, the government cannot here claim the police would have sought a warrant absent the unlawful antecedent warrantless search and observations made pursuant thereto. Moreover, the second warrant was additionally sought and issued based not only on that observed during the unlawful warrantless search, but on evidence illegally seized pursuant the execution of the first invalid warrant.

Accordingly, the search warrants are invalid, requiring the suppression of evidence seized in violation of Mr. Chan's Fourth Amendment rights.

## V.   THE SEARCH WARRANTS MUST ALSO BE QUASHED AND EVIDENCE SUPPRESSED BASED ON FACIAL INSUFFICIENCY OF PROBABLE CAUSE.

### A.   Legal Standards for Facial Review

The United States Supreme Court has held courts must "conscientiously review the sufficiency of affidavits on which warrants are issued" to insure an independent reviewing court's function has been properly and adequately performed. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Pursuant to this function, a determination must be made as to whether the issuing magistrate was provided with an accurate and substantial basis for concluding probable cause to issue a search warrant existed. *Id.* at 238.

Probable cause, based on the totality of the circumstances, must be presented on the face

of supporting affidavits demonstrating "a fair probability that contraband or evidence of a crime will be found in [the] particular place" to be searched. *Id.* at 238. That is, "[p]robable cause exists where the facts and circumstances within the affiant's knowledge and of which they had reasonably trustworthy information sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

This totality of the circumstances analysis requires examination of the "'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238-239. An affidavit based on mere suspicion or belief, or stating a conclusion without disclosure of underlying facts, is wholly insufficient. *Id.* at 239. "[A] mere conclusory statement ... gives the magistrate virtually no basis at all for making a judgement regarding probable cause." *Id.* at 230. Additionally, although an affiant may rely on hearsay, there must also be "'a substantial basis for crediting the hearsay.'" *Id.* at 241-242, quoting, *Jones v. United States*, 362 U.S. 257, 269 (1960). As such, an examination of the "veracity," "reliability" and "basis of knowledge" of persons supplying information contained in an affidavit and alleged in support of probable cause is critical. *See Id.* at 238-239; see also *Stoot v. City of Everett*, 582 F.3d 910, 919 (9th Cir. 2009).

Although officers may rely on statements made by alleged victims of a crime, "such information does not, on its own, support a finding of probable cause if the information is not reasonably trustworthy or reliable." *Stoot, supra,*, 582 F.3d at 919; see also, *United States v. Struckman*, 603 F.3d 731, 742 (9th Cir. 2010); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) ("must independently investigate the basis of the [domestic violence victims'] knowledge or interview other witnesses"); *Arpin v. Santa Clara Valley Transportation*, 261 F.3d 912 (9th Cir. 2001) ("In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses").

**B.**     **Application of Standards Revealing Facial Insufficiencies in this Case.**

Upon a conscientious review of the sufficiency of the affidavits in this case, pursuant to

*Gates,* and its progeny, the facts fail to provide a substantial basis for the magistrate's conclusion of probable cause to issue search warrants to search for prohibited firearms and additional items listed therein.

First, assuming arguendo the Court does not find illegally gathered information resulted in the decision to seek and/or issue the warrants (see Argument § IV.D., *supra*), the observations made during the warrantless entry and search must be excised. Even if not excised, however, the observations made fail to support probable cause. As shown on the face of the affidavits, it could not be determined if the firearms observed "were prohibited or not." (See, Exhibit A, Affidavit at p. 2; Exhibit B, Affidavit at p. 3.)

Second, the unreliable ex-girlfriend's statement that she saw weapons fails to provide support to the probable cause analysis where conclusory, without a basis of knowledge and lacking underlying facts required to give weight to such a statement such as when or where she allegedly made this observation. (See, Exhibit A, Affidavit at p. 2; Exhibit B, Affidavit at p. 3.) As there are insufficient facts included to establish the requisite "veracity," "reliability" and "basis of knowledge" for this statement, it cannot support probable cause to search for illegal weapons, or evidence related thereto. *See, e.g., Gates*, *supra,* 462 U.S. at 238-239. Here, none of the ex-girlfriend's alleged statements included in the affidavits, such as that he "calls and texts her incessantly" or those regarding alleged abuse, provide any weight to a probable cause analysis required to search for prohibited items listed in the warrants, including firearms and ammunition. (See, Exhibit A, Affidavit at pp. 1-2; Exhibit B, Affidavit at pp.. 1, 3.)

Third, California *Penal Code § 1524,* entitled "Grounds for issuance of warrant; Protection of evidence; Gun violence restraining order; Seizure of prohibited items; Procedure[,]" offers no basis for obtaining a search warrant for Mr. Chan's home. See *People v. Superior Court* (*Corbett*) (2017) 8 Cal.App.5th 670, 692.

According to the search warrant affidavits, Mr. Chan "refused to allow police to retrieve his weapons when he was presented with a Gun Violence Restraining order, on 28 May 2018, at 1315 hrs." (See, Exhibit A, Search Warrant at p. 1, Affidavit at p. 2; Exhibit B, Search Warrant at p. 1, Affidavit at p. 3.) *Penal Code § 1524(a)(11)* provides as follows:

Beginning January 1, 2016, the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order that has been issued pursuant to Division 3.2 (commencing with *Section 18100*) of Title 2 of Part 6, if a prohibited firearm or ammunition or both is possessed, owned, in the custody of, or controlled by a person against whom a gun violence restraining order has been issued, the person has been lawfully served with that order, *and the person has failed to relinquish the firearm as required by law*.

(Emphasis added.)

The affiant fails to establish that Mr. Chan was "lawfully served" and failed "to relinquish the firearms as required by law." See *ibid.* A refusal "to allow police to retrieve his weapons[,]" as stated in the affidavits, is *not* a failure to relinquish as is required by law under the statute.

Moreover, the provisions under *§ 1524* "contemplate a firearms owner with firearms in or subject to his immediate possession or control—not the case with a defendant in custody." *Corbett*, *supra,* 8 Cal.App.5th at 688 fn 8. In *Corbett*, the court held the prosecution failed to establish the warrant could have been properly issued based on defendant's purported failure to comply with his obligation under *§ 1524,* due to the requisite notice deficiency and lack of an opportunity to comply since he was in custody or to arrange for their surrender. *Id.* at 689-692. "The People's view of this statute would permit the police essentially to convert an emergency protective order—which requires only a showing of good cause, not probable cause ... to a search warrant just by holding the restrained person in custody for 24 hours." *Id.* at 692 (discussing due process, equal protection and fourth amendment constitutional problems with such an interpretation). Likewise, Mr. Chan was in custody when allegedly served with the order, thus, he did *not* have the requisite opportunity to relinquish any firearms, nor was he afforded an alternative to arrange for their surrender.

Finally, *Penal Code § 18250*, entitled "Authority of peace officer to take temporary custody of firearm at scene of domestic violence[,]" similarly does not provide any basis for probable cause to issue the search warrants. *Subsection (a)* provides as follows:

If any of the following persons [specified law enforcement officers] present at the scene of a domestic violence incident involving a threat to human life or a physical assault, is serving a protective order as defined in *Section 6218* of the *Family Code*, or is serving a gun violence restraining order issued pursuant to Division 3.2 (commencing with Section 18100), that person shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the peace officer or other persons present[.]

In the present case, the following requirements were not present for application of this statute: (1) police were not "at the scene" while "serving a gun violence restraining order[,]" but instead served the order while defendant was in custody; (2) the firearms were not observed in "plain sight" while serving the order or discovered pursuant during either a "consensual" or "other lawful search[;]" and (3) seizure was not "necessary for the protection" of any persons present. See *Ibid.*[4]

Therefore, pursuant to *Gates*, *supra,* and its progeny, the facts as presented by the affiant failed to provide a substantial basis for the magistrate court's conclusions. When the tainted information is set aside, California statutory law discussed above is rejected as a basis for a search, and a close review of the remaining irrelevant, unreliable and conclusory information fails to support probable cause on the face of the warrants as required to search Mr. Chan's home for evidence related to prohibited firearms. Accordingly, Mr. Chan requests this Court quash the warrants.

## VI. ALTERNATIVELY, DEFENDANT HAS MADE A SUFFICIENT PRELIMINARY SHOWING TO REQUIRE A *FRANKS* HEARING AND TRAVERSAL.

To adequately perform the intended role of an independent judicial officer standing between the government and its citizenry, the magistrate must be fully and accurately informed of the relevant facts by the affidavit. See *Giordenello v. United States*, 357 U.S. 480 (1950). Here, the affiant did not comply with this requirement. Therefore, assuming arguendo the Court finds the warrants should not be invalidated as a result of the antecedent constitutional violations or quashed based on defendant's facial attack of probable cause (see fn 15, *supra*), Mr. Chan has made a sufficient preliminary showing entitling him to evidentiary proceedings and traversal, pursuant to *Franks v. Delaware*. (See Statement of Fact, § II.C., *supra.,* supported by Exhibits filed herewith.)

In *Franks*, the United States Supreme Court recognized the sufficiency of an affidavit

---

[4] Even if the statute could be stretched in such a way to obliterate the Fourth Amendment's application in domestic violence cases, the government would have to produce sufficient evidence to establish probable cause to support Mr. Chan's warrantless arrest.

1   offered in support of an application for a search warrant may be subject to sub-facial challenge:

2       [W]here the defendant makes a substantial preliminary showing that a false
       statement knowingly and intentionally, or with reckless disregard for the truth,
3       was included by the affiant in the warrant affidavit, and if the allegedly false
       statement is necessary to the finding of probable cause, the Fourth Amendment
4       requires that a hearing be held at the defendant's request.

5       438 U.S. at 155-156.

6   That is, if defendant demonstrates by "the affidavit's false material set to one side [and] the

7   affidavit's remaining content is insufficient to establish probable cause, the search warrant must

8   be voided and the fruits of the search excluded to the same extent as probable cause was lacking

9   on the face of the affidavit." *Ibid*.

10      Although *Franks* specifically addressed only the question of false statements, it has long

11   been established material omissions likewise provide a basis of attack to be measured by the

12   same standards. If an omission of fact from an affidavit supporting the search warrant was either

13   intentionally misleading or recklessly inaccurate, the omission is no different from a reckless

14   falsehood or deliberate lie. See, e.g., See, *United States v. Stanert*, 762 F.2d 775, 781, amended,

15   769 F.2d 1410 (9th Cir. 1985) ("[b]y reporting less than the total story, an affiant can manipulate

16   inferences a magistrate will draw"); *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995)

17   (recklessness may be inferred directly from the omission itself). As the Ninth Circuit has stated:

18       Clear proof of deliberate or reckless omission [or false/misleading statements] is not
       required. See *United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). Such proof
19       is reserved for the evidentiary hearing. *Id.* At this stage, all that is required is that the
       defendant make a substantial showing that the affiant intentionally or recklessly omitted
20       facts required to prevent technically true statements in the affidavit from being
       misleading.

21
       *Stanert, supra*, 762 F.2d at 781; see also *United States v. Gonzalez, Inc.*, 412 F.3d 1102,
22       1111 (9th Cir. 2005).

23      Accordingly, to prevail on a *Franks* challenge, a defendant must make a substantial

24   preliminary showing: (1) the affiant intentionally, or with reckless disregard for the truth,

25   included a false or misleading statement in, or omitted information from, the affidavit in support

26   of the warrant; and (2) the affidavit would not establish probable cause if the false and/or

27   misleading information is ignored, or the omitted information is supplemented.

28      Mr. Chan has certainly made a minimum preliminary showing required to order a *Franks*

1   hearing and traversal, and thereafter suppression. As demonstrated in detail in the above

2   Statement of Facts, supported by the discovery produced in this case, including, but not limited

3   to, Exhibits filed herewith, the affiant intentionally, or at least recklessly, misled the magistrate

4   courts by falsifying and presenting misleading information, omitting key facts and including

5   illegally obtained information, material to the probable cause findings. Indeed, the defense has

6   identified 13 categories of material falsehoods and omissions, including lies about what the

7   officers were told and observed. Individually any one of these 13 assertions would call the

8   warrant into question, and together they are indefensible. (See Statement of Facts at § II.C..)

9          Accordingly, Mr. Chan has made an offer of proof sufficient to entitle him to a hearing

10  under *Franks* and traversal of the warrant. Following the hearing, this reviewing Court will again

11  be asked to correct the search warrant affidavits by excising the false and misleading

12  information, adding the omitted information, and retesting for probable cause. Indeed, action on

13  the omissions and misleading information detailed herein undermines the validity of the warrant.

14  **VII.   LEON'S GOOD FAITH EXCEPTION DOES NOT APPLY.**

15         To invoke the good faith exception created in *United States v. Leon*, 468 U.S. 897 (1984),

16  the prosecution must prove that "its agents' reliance upon the warrant was objectively

17  reasonable." The burden of establishing "good faith" is on the prosecution, not the defendant.

18         The good faith exception is inapplicable to save a warrant under the following

19  circumstance:

20         1.      The Magistrate was misled by information in an affidavit that the affiant knew
                   was false or would have known was false except for his reckless disregard of the
21                 truth;

22         2.      The Magistrate wholly abandoned their judicial role;

23         3.      The affidavit is so lacking in indicia of probable cause as to render official belief
                   in its existence entirely unreasonable; or
24
           4.      The warrant is so facially deficient that the officer cannot reasonably have
25                 believed it to be valid.

26  *Id.* at 923 (citations omitted).

27         Moreover, evidence obtained pursuant to a search warrant based on an earlier illegal

28  search or seizure is not admissible under the good-faith exception of *Leon*, even when the

1  affidavit discloses the prior illegality. *United States v. Song Ja Cha*, 597 F.3d 995, 1004-1007

2  (9th Cir. 2010) (holding that the good faith exception did not save the tainted evidence seized

3  pursuant to the subsequent warrant because it was the product of the original unlawful entry).

4  "To create [such] an exception ... would defeat the purpose of the exclusionary rule, for it would

5  remove the incentive for police to make certain that they properly understand the law that they

6  are entrusted to enforce and obey." *Id.* at 1005 (internal quotations and citation omitted).

7        The circumstances in this case render *Leon*'s good faith exception inapplicable. First,

8  since the search warrants are based on an earlier illegal search the good-faith exception does not

9  apply. *Song Ja Cha, supra*, 597 F.3d at 1004-1007. Second, the exception has no application

10 where "a reasonably well trained officer would have known that the search was illegal despite the

11 magistrate's authorization." *Leon, supra,* 468 U.S. at 922, n.3. Third, the *Franks* showing renders

12 the good faith exception inapplicable. *United States v. Jacobs*, 986 F.2d 1231, 1235 (9th Cir.

13 1993) ("under *Leon*, a *Franks* violation is not excused").

14       Accordingly, the government cannot meet its burdens to save the warrants. To conclude

15 otherwise would be to condone an error so fraught with the potential for abuse as to seriously

16 undermine the constitutional protections afforded by the Fourth Amendment.

17 **VIII.   ALL EVIDENCE OBTAINED AS A RESULT OF UNLAWFUL SEARCHES AND**
   **SEIZURES IS THE "FRUIT OF THE POISONOUS TREE" AND MUST BE**
18 **SUPPRESSED.**

19       The "fruit of the poisonous tree" doctrine provides the exclusionary rule operates to

20 prevent the use of evidence obtained as the indirect product of unlawful conduct in the same

21 manner that it precludes the use of evidence directly obtained by improper conduct. *Segura v.*

22 *United States*, 468 U.S. 796, 804 (1984); *Wong Sun v. United States*, 371 U.S. 471 (1963).

23       In the instant case, law enforcement conducted illegal searches and seizures. Accordingly,

24 all evidence obtained either as a direct or indirect result of these Fourth Amendment violations

25 must be suppressed.

26 //

27 //

28

1    **IX.     <u>CONCLUSION</u>**

2           Nearly a century ago, Supreme Court Justice Brandeis opined in his dissent in *Olmstead*

3    *v. United States*, 277 U.S. 438, 485 (1928):

4                    Decency, security and liberty alike demand that government
                     officials shall be subjected to the same rule of conduct that are
5                    commands to the citizen. In a government of laws, existence of the
                     government will be imperilled if it fails to observe the law
6                    scrupulously.  Our Government is the potent, omnipresent teacher.
                     For good or for ill, it teaches the whole people by its example.
7
                     Crime is contagious. If the Government becomes a lawbreaker, it
8                    breeds contempt for law; it invites every man to become a law unto
                     himself; it invites anarchy.  To declare that in the administration of
9                    the criminal law the end justifies the means -- to declare that the
                     Government may commit crimes in order to secure the conviction
10                   of a private criminal -- would bring terrible retribution. Against
                     that pernicious doctrine this Court should resolutely set its face.
11
             Based on the foregoing, in furtherance of our most valued rights under the Fourth
12
     Amendment, defendant respectfully urges this Court to grant this motion to suppress.
13
             Dated: November 9, 2020                    Respectfully submitted,
14

15                                                      /s/ *John D. Forsyth*
                                                        JOHN D. FORSYTH
16                                                      Attorney for Defendant
                                                        CLARENCE CHAN
17

18

19

20

21

22

23

24

25

26

27

28