JOHN D. FORSYTH, SBN 178341
LAW OFFICES OF JOHN D. FORSYTH
2431 Fillmore Street
San Francisco, California 94115
Telephone: (415) 401-0729
Facsimile: (415) 401-7609
sotts@earthlink.net

Attorney for Defendant
CLARENCE CHAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>CLARENCE P. CHAN,<br><br>  Defendant. | Case No. 5:19-cr-00521-BLF-1<br><br>REPLY TO OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, QUASH SEARCH WARRANTS, AND TRAVERSE PURSUANT TO *FRANKS v. DELAWARE*<br><br>Date: February 9, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. FACTUAL BACKGROUND RELATED TO WARRANTLESS SEARCH ISSUES . . . . . . . . . 1

   A. The Belief There May Have Been a Second Victim Was Not Reasonable. . . . . . . . . . . . 1

   B. Additional Facts Lend No Support for the Application of the Emergency Aid Exception..2

      1. Domestic Violence Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      2. Alleged Assault and Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      3. Premise History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      4. Allegations Re: "Weapons, Swords and Guns" . . . . . . . . . . . . . . . . . . . . . . . . . 3

      5. Defendant's Criminal History Known Prior to Warrantless Search . . . . . . . . . . 4

      6. Plain View. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. THE WARRANTLESS SEARCH OF MR. CHAN'S HOME VIOLATED HIS FOURTH
AMENDMENT RIGHTS REQUIRING SUPPRESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A. Emergency Aid Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   B. Good Faith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   C. Independent Source. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   D. Inevitable Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   E. Policy Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. ALTERNATIVELY, WARRANTS MUST BE QUASHED AND TRAVERSED. . . . . . . . . . 13

   A. Probable Cause on the Face of the Affidavits Is Lacking . . . . . . . . . . . . . . . . . . . . . . . 13

   B. Alternatively, a *Franks* Hearing Should be Held and Warrants Traverse. . . . . . . . . . . 14

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Herring v. United States*, 555 U.S. 135 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Illinois v. Gates*, 462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mapp v. Ohio*, 367 U.S. 643 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Maryland v. Buie*, 494 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Murray v. United States*, 487 U.S. 533 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Nix v. Williams*, 467 U.S. 431 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Ninth Circuit Cases**

*Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Frimmel Mgmt, LLC v. United States*, 897 F.3d 1045 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Black*, 482 F.3d 1035 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Camou*, 773 F.3d 932 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Garcia* (*Garcia I*), 749 Fed.Appx. 516 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . 6, 7, 8

*United States v. Garcia* (*Garcia II*), 974 F.3d 1071 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Gorman*, 859 F.3d 706 (9th Cir. 2017), amended, 870 F.3d 973 and substituted opinion, 2017 U.S.App.Lexis 18610 (Sept. 14, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Miller*, 769 F.2d 554 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Ngumezi*, 980 F.3d 1285, 2020 U.S.App.LEXIS 36558 (9th Cir. 2020) . . . . . . . . . . . . 12

*United States v. Russell*, 436 F.3d 1086 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Russell,* 436 F.3d 1086 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Reply to Opp. to Def's MTS
5:19-cr-00521-BLF-1                                    iii

1     COMES NOW defendant Clarence P. Chan, by and through counsel, and submits the following
2 in Reply to the United States' Opposition to Defendant's Motion to Suppress Evidence and Quash
3 Search Warrants, hereinafter "Opposition" or "Opp." (ECF No. 54).

4     The Government has failed to meet their heavy burdens required to justify the warrantless police
5 intrusions under the Fourth Amendment, and for application of any recognized exception to the
6 exclusionary rule. Even accepting all the facts advanced by the prosecution as true, this Court should
7 find as a matter of law defendant's constitutional rights were violated and suppression is required. If not,
8 an evidentiary hearing must be held to resolve contested issues of fact and make credibility
9 determinations before deciding this Motion. Alternatively, assuming arguendo suppression is not granted
10 as a result of the antecedent unlawful warrantless search issues, the search warrants should nevertheless
11 be quashed, traversed and suppression granted.

## I. FACTUAL BACKGROUND RELATED TO WARRANTLESS SEARCH ISSUES

In support of the Opposition the Government relies on a Palo Alto Police Department ("PAPD") officer who did not activate his body camera. (See Opp., Philip's Decl., Ex. 1.[1]) Absent are declarations or proffers of testimony from any of the other three others who searched without a warrant or other officers present, including, for example, the search warrant Affiant, Sergeant Moore, who "handled the criminal investigation team and subsequent weapons search warrants." (See id. at ¶¶ 4, 11, 13.) As shown below, key facts advanced in the Opposition, including Philip's Declaration, are not supported by the recorded evidence. Moreover, the Government relies on facts insignificant to the issues here raised.

### A. The Belief There May Have Been a Second Victim Was Not Reasonable.

On May 28, 2018, four PAPD officers entered and searched Mr. Chan's home without a warrant.

---

[1] Lt. Philip's did not author reports or activate recording devices, but for 33 seconds of his Mobile Audio/Video Recording while driving away from Chan's residence. (See U.S. Discovery at CHAN-000922.) This violates PAPD policy and should be considered in evaluating his credibility and the accuracy of his statements. Defendant intends to move in limine, pursuant to this Court's General Order No. 69 (II.D.), in advance of evidentiary proceedings which may be held on this Motion to seek to admit records relevant to evaluating the credibility of this Officer.

Per the search warrant affidavits, the stated basis for their warrantless intrusion was to conduct a "protective sweep because it was unknown if there were other parties in the home in need of assistance." (Ex A, Affidavit at 2; Ex. B, Affidavit at 3.) The Government, however, does not attempt to justify the warrantless search as a "protective sweep," but instead under the emergency aid doctrine. (See Opp. at 1:14-16, 6:18-11:21.) The insurmountable problem for the prosecution is that there was no information to support a belief anyone remained inside the residence, much less in imminent need of aid.

Lt. Philip's alleges the PAPD entered to make sure it was a code 4 (i.e., there were no other persons in need of help). (Ex. 1 at ¶¶ 13, 14.) Claiming "[a]t some point I learned that the suspect had the female's friend inside the residence" (*Id.* at ¶ 9), he fails to identify the source. (*Ibid.*) Moreover, this claim is discredited by all the information available to police indicating noone remained inside.

The recorded 911 call and dispatch (CAD) confirms the complaining witness was in a secure location at the neighbors' residence, noone else was at Mr. Chan's residence, and that he had voluntarily exited, was cooperative and in police custody before the officers' warrantless entry and search of his home at approximately 9:28 hours. (See, e.g., Ex. D at 3:1-3, 5:9, 10:6-9, 11:7-10, 12:3-8, 16:10-11, 19:25-20:12, 22:20-28, 26:19-26; Ex. E at 5:12-6:5, 7:1-11; Ex. F at 1-5; Ex. G at 1-5, 8; see also, Ex. 1 at ¶ 4.) Erroneously written into the CAD log at 9:01:39 is the phrase: "He also has her friend[.]" (Ex. F at 2.) This error was corrected on the log over 20 minutes before the officers made the warrantless entry. (*Id.* at 3; see also, Exs. D at 1-26; E at 1-7; F at 2 and 4 (9:07:22 and 9:19:30 entries: "Noone but Clarence should be in the house he is in"), at 3 (9:14:03 entry: "*** He has her phone not 'friend'").) Moreover, even prior to the correction, when one of the officers asked dispatch about the "entry about the friends" and whether "he or her is being held against their will?", dispatch responded: "[I]t doesn't sound that way." (Ex. E at 3:10-11.) Also, per Lt. Philip he was listening to the verbal CAD, not the written computer CAD (Ex. 1 at ¶ 9) where the erroneous information was entered.

**B.      Additional Facts Lend No Support for the Application of the Emergency Aid Exception.**

**1.      Domestic Violence Generally**: There is no dispute responding to domestic violence calls may be dangerous, can involve weapons and requires "precautions ... to ensure safe resolution." (Ex. 1 at w¶¶ 2, 14.) The circumstances of each case, however, must be taken into account, which again do not

indicate there was anyone remaining inside the home, let alone in need of emergency aid. Moreover, as demonstrated below, the additional facts and circumstances known to police before their warrantless search support, rather than detract from, finding a reasonable basis was lacking.

**2.     Alleged Assault and Injuries:** Lt. Philip's description of the assault exaggerates the allegations made by the complaining witness. (See Ex. 1 at ¶¶ 9, 12.) He fails to include: (1) The reporting party told dispatch she was not injured and neighbor confirmed she had no apparent injuries (Ex. D at 5:19-26; Ex. E at 5:2; Ex. F at 1 (8:53 ("Medics not needed"), 2 (8:58), 3 (9:19)); (2) her communications demonstrated she appeared most concerned about retrieving her phone (Ex. D at 1:25-26, 2:16-17, 8:4-13, 11:16-28, 13:23-26, 14:4, 19:6, 19:22, 21:15, 22:3-4); and (3) medics responded due to the concern Mr. Chan was "having a medical issue" rather than the reporting party (Ex. D at 26:14-15; Ex. E at 7:28-8:3; Ex. F at 5). Further, it has never been alleged weapons were involved or any subjects were under the influence which can escalate dangerousness. (Ex. D at 12:9-10; Ex. F at 2 (9:07).)

**3.     Premise History:** The sole history reported at the residence was a 2014 civil code enforcement report there may have been an electrical box on the side of the house with guns. (Ex. E at 4:14-16; Ex. F at 4:14-16, 7:24 ("no history there, just a utility call"); Ex. F at 3 (9:09:37).) There was no report any guns were found. (See *ibid.*) Further, although Lt. Philip's states this was "Chan's premise history[,]" it was not known whether he resided at this residence four years earlier. (See Ex. 1 at ¶ 8.)

**4.     Allegations Re: "Weapons, Swords and Guns"**: Pursuant to the CAD audio, the unidentified male police officer (MPO) on the transcript identified in the Opposition as Agent Correia, states: "Clarence is a friend of mine ... Clarence lives at Laurel. He lives at the uh, address they're headed to ... Uh, numerous weapons, and uh, he's big into uh, swords and guns ... friendly to PD, uh, supports our cause ... Usually friendly to PD, numerous weapons, swords and guns." (Ex. E at 2:25-3:4.) According to Lt. Philip, he then spoke to Agent Correa on a second police channel for which no log or recording has been produced,[2] stating Correa told him that he was "familiar with Chan from prior

---

[2] Upon receiving the Opposition, defendant requested further discovery including CAD logs and audio recordings from this second channel. AUSA Scott Simeon advised, pursuant to an email on January 6, 2020, there is only the one CAD printout (Ex F) and that "channel 2 audio should have been

dealings and as a result, knew that Chan owned weapons, swords and guns" and described him as a "weapons enthusiast." (Ex. 1 at ¶ 6.) Like Lt. Philip, Correa did not write a report and failed to activate MAV and/or BWC devices in violation of PAPD policy. (See fn 1, *supra.*) Instead, the discovery produced includes Agent Correa's BWC recordings, however, they only reflect his conversation with Mr. Chan's mother after the warrantless search. Notably, the search warrant affidavits did not include Agent Correa's statements about weapons. (Exs. A and B.) Even if Agent Correa's hearsay statements are found credible and reliable, in no way do they lend any support to justify the warrantless police intrusions, but instead demonstrate an unlawful pretext to investigate a potential crime rather than application of the emergency aid doctrine.

Nevertheless, assuming arguendo, the Court considers these alleged vague statements as a factor in its analysis, the officers should be subjected to questioning. For example, Lt. Philip's declaration states Agent Correa told him he "was familiar with Chan from prior dealings," without including any specifics as to what these "prior dealings" were and when they took place. Further, it is unknown whether his alleged knowledge of Mr. Chan is based on observations or statements made. (See Ex. I at ¶ 6.) Furthermore, it is not a crime to be interested in weapons and to be described as a "weapons enthusiast" even for an ex-felon, but instead a constitutional right.

In addition, the prosecution relies on the complaining witness' statements and attaches selected text messages she showed police on her phone after the warrantless search. (See, e.g., Opp. at 4:21-6:13 and Ex 3, citing Exs. G and H.) These are, therefore, not relevant to determining the legality of the warrantless police actions. Instead, what she told dispatch before the search was that she does not know if Mr. Chan had any weapons. (Ex. D at 3:4-5.)

**5.     Defendant's Criminal History Known Prior to Warrantless Search:** Regardless of what the police eventually learned, Mr. Chan's criminal history lends no support to determining if there was a reasonable belief a victim remained inside his residence in need of emergency help on May 28, 2018. Be that as it may, the recorded evidence does not show the officers were aware he had any

---

recorded; however, for some reason the recording system didn't work and there is no channel 2 audio for that day."

convictions prior to the warrantless search. (See, e.g., Ex. F at 3 (9:09:39) and 4 (9:19:30) ("cited in 2016 for MC for firing and poss of guns and firearms"). Lt. Philip's declaration alleges when he switched to a second communication channel they were "provided a summary of Chan's criminal history ... which included assault with a deadly weapon and firearms charges." (Ex. 1 ¶ 10 (emphasis added).) The CAD log, however, reflects that defendant only had a prior citation. Further, Lt. Philip's declaration includes conflicting information where in ¶10 he states they were "charges" and in ¶16 they "were aware at the time that Chan was a convicted felon." (Ex. 1.) Finally, even if police knew before the warrantless entry and search that Mr. Chan was a convicted felon, these convictions were extremely remote where the most recent was approximately 17 years ago for an ex-felon in possession of ammunition and the others more than 26 years prior to the challenged search. (See Ex. 2.)

**6.** **Plain View**: If this Court finds the warrantless entry was unlawful, the observations police reportedly made are tainted and cannot be considered regardless of whether or not the items were seen in plain view. Assuming arguendo, the entry is found lawful, Lt. Philip's declaration is insufficient to meet the Government's burden to show the police did not look into areas not accessible to a human body. (See Ex. 1 at ¶¶ 15-16.) Philip's declaration fails to include information to show which officers allegedly made the alleged "plain view" observations, there is no video taped evidence of any of the searches conducted in this case, and the search warrant photos reveal the evidence manipulated and not as it would have been at the time of the search (see, e.g., Ex. 4). Furthermore, Sgt. Moore's search warrant affidavits state that Philip's told her "he saw at least 4 firearms during the protective sweep ... he was not able to determine, at that time, if the firearms were prohibited or not[,]" which conflicts with Lt. Philip's declaration stating there was "a rifle on a tripod on top of a cabinet, a rifle (or rifles) in a closet[,]" not four firearms. (See Ex A, Affidavit at p. 3; Ex. B, Affidavit at p. 3; Ex. 1 at ¶ 16.)

**II.** **THE WARRANTLESS SEARCH OF MR. CHAN'S HOME VIOLATED HIS FOURTH AMENDMENT RIGHTS REQUIRING SUPPRESSION.**

As a matter of law, the Government has not and cannot meet their heavy burdens required for application of the emergency aid doctrine or any recognized exception to the exclusionary rule to avoid suppression of evidence resulting from the clear and egregious violation of Mr. Chan's Fourth Amendment rights. Alternatively, an evidentiary hearing must be held to resolve facts and make

credibility determinations before deciding this Motion.

### A.      Emergency Aid Doctrine

It is undisputed the burden is on the Government to show the circumstances "viewed *objectively*, [must] justify [the warrantless] action[.]" See *Bonivert v. City of Clarkston*, 883 F.3d 865, 876 (9th Cir. 2018) (citations omitted) (emphasis in original); see also Opp. at 7:1-8. That is, the "police bear a heavy burden ... because the emergency exception is 'narrow' and 'rigorously guarded,'" and the facts viewed "in the light most favorable" to defendant in determining whether there were "circumstances pointing to an actual or imminent injury inside the home." *Bonivert*, 883 F.3d at 871, 77-78 (citation omitted).

The facts proffered by the Government, even if accepted as true, fall short of meeting their heavy burden. In fact, all the objective evidence available to police proved noone remained inside Mr. Chan's home prior to the search. (See Section I.A., *supra*.) Moreover, even if the officers had reasonable grounds to believe someone may be inside who may have needed help, "the mere possibility of an emergency is not enough; a search under the emergency aid exception is lawful only if it was reasonable to believe that an emergency actually existed. See *Snipe*, [*infra*] 515 F.3d at 952 (holding that there must be 'an objectively reasonable basis for concluding that there was an immediate need to protect others ... from serious harm' (emphasis added)).The difference is perhaps subtle, but it is determinative." *United States v. Garcia* (*Garcia I*) 749 Fed.Appx. 516, 518, fn 1 (9th Cir. 2018).

Moreover, the prosecution's arguments concerning the dangers of responding to domestic violence calls generally, the circumstances of this case and Mr. Chan's remote criminal history do not in any way support a reasonable belief that there was a second victim in the home. (See Section I.B., *infra*.)

First, there is no domestic violence exception to the exclusionary rule. See, e.g., *Bonivert, supra*, 883 F.3d at 877 ("all of our decisions involving a police response to reports of domestic violence have required an objectively reasonable basis for believing that an actual or imminent injury was unfolding in the place to be entered"). Second, consideration of "the gravity of the underlying offense" lacks merit in determining whether the emergency aid doctrine applies. *United States v. Snipe*, 515 F.3d 947, 952, fn 6 (9th Cir. 2008). Third, without evidence of actual weapons possession prior to the warrantless search (see II.B.4, citing Ex. D at 3:4-5 (did not know if he had weapons), the possibility weapons may be found

does not support finding an emergency. See, *Garcia I*, *supra,* 749 Fed.Appx. at 518-519 ("[t]he possibility that Nevarez might have had a gun that he left inside the house prior to his arrest is not only speculative, but even if true, not *ipso facto* sufficient to create an emergency") (citation omitted). Moreover, even if credible objective evidence existed that Mr. Chan had weapons, where it was also reported he was friendly to police, had calmly exited, was fully cooperative and securely in police custody, it is immaterial whether or not there were weapons inside. (See Sections I.A. and II.B.4.)

This case stands in stark contrast to the three Ninth Circuit cases relied upon by the Government. (See Opp. at 7:24-10:2, citing *United States v. Black*, 482 F.3d 1035 (9th Cir. 2007), *Snipe, supra,* 515 F.3d 947 and *United States v. Russell,* 436 F.3d 1086 (9th Cir. 2006). Instead, these cases support, rather than defeat, the unavailability of this exception to justify the warrantless actions in the present case.

In *Black, supra*, 482 F.3d at 1039-40, it was reported the suspect actually had a gun and victim's whereabouts were unknown when the police entered. Whereas here, the reporting party said she did not know if Mr. Chan had any weapons and the police knew she was in a secure location. (See Sections I.A. and II.B.4.) In fact, the Ninth Circuit distinguished *Black* on similar grounds, finding the emergency aid doctrine inapplicable. *Bonivert, supra*, 883 F.3d at 877, 879; *Garcia I*, *supra,* 749 Fed.Appx. at 518-519.

In *Snipe, supra*, before entering, unlike the present case, the officers did not know where the reporting party or suspects were located, and a neighbor reported there was both an unknown vehicle parked outside and an unknown person was seen entering the residence. 515 F.3d at 949, 953. Again, the Ninth Circuit distinguished *Snipe* on similar grounds as those present in Mr. Chan's case. See, *Bonivert, supra*, 883 F.3d at 879; *Garcia I*, *supra,* 749 Fed.Appx. at 518, fn 1, 519 (unlike *Snipe* and *Black* "the only person arousing their suspicions was arrested outside the residence prior to their entry").

Finally, the prosecution's reliance on *Russell, supra,* is absurd. In that case, multiple confused 911 calls reported shooting inside a home, and the shooter and an additional victim may have been inside. 436 F.3d at 1087-90. Although the Government attempts to draw similarities by citing to the description that the situation was also "convoluted" (see Opp. at 10:3-23), unlike *Russell*, in the present case any confusion concerning the victim's and suspect's locations and the erroneous entry about the friend were all resolved long before the officers' warrantless intrusion. (See Section I.A., *supra.*)

Moreover, even if there remained confusion, the circumstances here, in contrast to *Russell*, required "additional steps to determine whether there is an emergency that justifies entry" since an objective basis required to support the belief was lacking. See, e.g., *Garcia I, supra*, 749 Fed.Appx. at 519 (citations and internal quotations omitted). Even if Lt. Philip's believed a second victim may be inside it would have only taken seconds to ask the other officers present, dispatch, the complaining witness or defendant for more information to confirm or dispel his beliefs. Given the number of officers present, the time it took to set up the staging area and proceed with the warrantless entry and search, additional steps could have been easily taken without any delay in rendering emergency aid in the event they learned there was an actual second victim inside. In fact, such steps were taken but ignored, as reflected by dispatch's response even before the correction that it did not sound like the "friend" was being held against her will, and the correction to the erroneous entry was made and repeated multiple times indicating the reporting party was concerned about her "phone" not a "friend." (See Section I.A., *supra.*)

Any evidence allegedly seen in plain view is therefore tainted where observed during the unlawful warrantless search. See, e.g., *United States v. Miller*, 769 F.2d 554, 556-557 (9th Cir. 1985), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). Furthermore, even if the warrantless entry is found lawful, the declaration of only one of the officers who searched is insufficient to meet the Government's burden of demonstrating their search was "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *Miller, supra,* 769 F.2d at 556-57; see also Section I.B.6, *supra*.

### B. Good Faith

The prosecution has failed to meet their burden required to apply the good faith doctrine under *Herring v. United States*, 555 U.S. 135, 140 (2009), and its progeny.

First, Lt. Philip is only one of four officers who searched without a warrant, and no evidence has been proffered that the other officers who participated shared his belief, and again, even if they did the requisite objective basis for finding there remained a victim inside in need of help was lacking. *Id.* at 140 ("In analyzing the applicability of the rule, *Leon* admonished that we must consider the actions of all the police officers involved.") (citation omitted).

Second, even if all the officers who participated believed there may be a person in the house, it would be "deliberate, reckless or grossly negligent" for them to act on such a belief based on a CAD entry corrected long before the search and where the error did not even mention a person in need of assistance. *Id.* at 144.

Third, the "Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights." *United States v. Camou*, 773 F.3d 932, 945 (9th Cir. 2014). "In fact, because 'objectively reasonable' and 'negligent' are mutually exclusive, the only way to reconcile the 'objectively reasonable reliance' rule established in *Leon* with *Herring* is to conclude that the officer who executed the unconstitutional search or seizure cannot have been the negligent actor." *Id.* at 945, fn 3. Although in the present case the erroneous CAD entry was made by police dispatch, at most it indicated the complaining witness' friend may have been inside Mr. Chan's residence, however, it was almost immediately thereafter clarified that it did not appear she was being held against her will and dispatch corrected the erroneous entry before the police entered. (See Section I.A., *supra*.) Finally, all the other information told to the police confirmed there was noone remaining inside. (See *ibid.*)

**C.  Independent Source**

The Government's reliance on the independent source doctrine in justifying the search is both legally and factually untenable.

First, as a matter of law the independent source doctrine does not apply where the untainted evidence is insufficient to support probable cause. Accordingly, should this Court find after excising the observations made during the warrantless entry probable cause is lacking, this doctrine does not apply. Second, even if this Court finds the untainted evidence sufficient, further inquiry is necessary to determine whether the officers would have sought, and the magistrate authorized the warrant absent the earlier constitutional violation. See, e.g., *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir. 2017), amended, 870 F.3d 973 and substituted opinion, 2017 U.S.App.Lexis 18610, * 23 (Sept. 14, 2017); see also authorities cited in defendant's moving papers (ECF Doc. No. 51-1, MTS Memo., hereinafter "Motion," at 21:13-22:6.) As the Supreme Court mandates, a subsequent lawful search cannot be an

independent source if: (1) the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or (2) information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant. *Murray v. United States*, 487 U.S. 533, 542 (1988).

     In the present case, the search warrant affidavit features the evidence seen during the questionable protective sweep, and the statements asserted which were not obtained through the unlawful entry are contradicted by the evidence and lack foundational requirements such as the basis for the victim's knowledge of Chan's involvement with firearms. Even assuming these allegations were not refuted by undisputed recordings, they fail to satisfy the Government's burden which requires more than pointing to a potential other source. Rather, the prosecution must present evidence proving that without the knowledge gained during the warrantless entry the officers would have still applied for a warrant *and* that the application would have been approved by a magistrate. Proof which is not only lacking in this case, but is in fact refuted during the May 29th interview when PAPD Officer Clausen admits there was no real concern about Mr. Chan's potential danger until after the police saw what was in the house, as Clausen states: "So I think – initially we didn't have - we weren't alarmed when we didn't know he was going to have massive amount of ammunition, guns, grenades in his house." (Ex. H at 30:14-20.)

     Moreover, as alluded to above, the Government fails to acknowledge that the statements claimed to support this doctrine are contradicted by the undisputed evidence. As previously detailed, the complaining witness did not report defendant "has weapons, and that she has seen the weapons" as falsely stated in the affidavit (Ex. A) and relied upon by the Government. (See, Section I.B.4., *infra*; Motion at 9:8-10, 11:7-25.) Instead, she told dispatch that she did not know whether he had any weapons (Ex. D at 3:4-5), and during the interview on May 28th she never says she saw weapons (Ex. G at 69:7-21). Moreover, she participated in a convoluted interview on May 29th after the execution of the first warrant during which many of her statements proved unreliable or false; yet she still did not state that she saw weapons in Mr. Chan's residence. (See Motion at 11:7-25; Ex. H; Sections II.D. and III.B., *infra*.) Also contrary to the affidavit, Mr. Chan did not refuse to allow police to retrieve firearms from his residence pursuant to the Firearm EPO as stated in the affidavits. (Motion at 10:12-21.) Finally, regarding Agent Correia's statement, not relied upon in seeking warrants, in the recorded version he

does not say he has personal knowledge Chan owned numerous weapons, swords, and guns but rather: "Clarence is a friend of mine ... Clarence lives at Laurel. He lives at the uh, address they're headed to ... Uh, numerous weapons, and uh, he's big into uh, swords and guns ... friendly to PD, uh, supports our cause ... Usually friendly to PD, numerous weapons, swords and guns." (See Ex E at 2:25-3:4.)

In effect, the Government has failed to present a legal or factual basis under which there are actual independent sources establishing probable cause, and from which it can be found the decision to seek the warrant was not prompted by what the officers had seen during the initial entry and that the magistrate's decision was not affected by this illegally obtained evidence. Thus, the independent source doctrine does not apply.

### D. Inevitable Discovery

The inevitable discovery doctrine is a closely related extrapolation from the independent source doctrine with the distinct requirement that the evidence actually be obtained through activities not related to the illegal actions. *Murray*, *supra*, 487 U.S. at 539. "Unlike the inevitable discovery doctrine, which asks whether evidence '*would have*' been discovered by lawful means rather than by means of the illegal search, the independent source doctrine asks whether the evidence *actually* was 'obtained independently from activities untainted by the initial illegality.'" *United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016) (internal citations omitted) (emphasis in original).

The Government bears the burden of demonstrating, based on a preponderance of the evidence, that the evidence would have been inevitably discovered. *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). Moreover, application of the doctrine cannot rely on "speculative elements;" instead, its application must turn "on demonstrated historical facts capable of ready verification or impeachment." *Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984).

Here, the Government claims the evidence would have inevitably been discovered based on the victim's May 29th interview in which she was questioned about the weapons observed during the warrantless entry and seized pursuant to the tainted search warrant. The recording of this interview demonstrates the information provided by the victim did not suggest she had ever *seen* what she knew to be real guns at Mr. Chan's residence, nor specify when she saw weapons and/or parts which may or may

not have been real. (See, Motion at 11-12 and Ex H.) Indeed, as above noted, the officer admits that the police were not concerned until they conducted the warrantless entry. (Ex. H at 30:14-20.) Given these facts, it is most disingenuous to suggest the police would have sought, let alone obtained a warrant based on the inconsistent and vague responses of this one witness. (See, Motion 11:7-12:7.) Be that as it may, the fact remains that the police did not actually do so. Accordingly, even the Government's proffer fails to meet the burden justifying the police action under the doctrine of inevitable discovery.

### E.   Policy Considerations

Suppression must be granted "to deter deliberate, reckless, or grossly negligent conduct" irregardless of societal cost. See, e.g., *Herring, supra,* 555 U.S. at 144. Even if such costs are considered, where the benefits of deterrence outweigh the costs exclusion is required.

Recently, the Ninth Circuit rejected an argument similar to that here made. In *United States v. Ngumezi*, 980 F.3d 1285, 2020 U.S.App.LEXIS 36558, *16 (9th Cir. 2020) the Court reasoned:

> First, although the flagrancy of the government's conduct is relevant to the attenuation doctrine, see *Strieff*, 136 S. Ct. at 2063, lack of flagrancy is not a freestanding basis for avoiding the application of the exclusionary rule—at least not where, as here, it falls short of establishing that the officer had an "objectively 'reasonable good-faith belief'" in the lawfulness of his conduct, *United States v. Lustig*, 830 F.3d 1075, 1080 (9th Cir. 2016) (quoting *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011)). Second, while it is true that applying the exclusionary rule in this case will mean that a guilty defendant goes free, that is true of applying the exclusionary rule in essentially every case. Nothing about this case calls for a remedy other than "[t]he typical remedy for a Fourth Amendment violation," which "is the exclusion of evidence discovered as a result of that violation from criminal proceedings against the defendant." *United States v. Garcia* [*II*], 974 F.3d 1071, 1075 (9th Cir. 2020).

Conducting a warrantless search of a residence without lawful justification is certainly more egregious than the officer's conduct in *Ngumezi*. See *id.* at *3-*4 (loaded handgun discovered pursuant to an inventory search after the police leaned inside the car during an otherwise lawful traffic stop). Furthermore, as the court stated in *Garcia II*, *supra*, 974 F.3d at 1080-81, even "accepting the district

court's finding the officers acted in good faith" suppression was required, in part, due to consideration of societal costs if the exclusionary rule were not applied: "The home is 'first among equals' for purpose of the Fourth Amendment [citation omitted], and it is no trifling matter for police to storm a residence with guns drawn. Incursions of this nature can have tragic results." (citation omitted). The prosecution's arguments concerning Mr. Chan's remote criminal history and evidence seized are inappropriate and should be disregarded. Courts have never allowed consideration of what a search eventually revealed in deciding whether to apply the exclusionary rule. See, e.g., *Mapp v. Ohio*, 367 U.S. 643, 695 (1961) ("The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.")

Finally, the Ninth Circuit makes clear that if an officer recklessly omits or falsifies material information, as has been shown in the present case, the officer has acted unreasonably and thus the officer's actions are sufficient to qualify as egregious conduct mandating the application of the exclusionary rule and precluding a finding of good faith. *Frimmel Mgmt, LLC v. United States*, 897 F.3d 1045, 1053 (9th Cir. 2018).

**III.    ALTERNATIVELY, WARRANTS MUST BE QUASHED AND TRAVERSED.**

    **A.    Probable Cause on the Face of the Affidavits Is Lacking.**

The Government argues even without consideration of information derived from the warrantless entry, that Mr. Chan's criminal history, a domestic violence victim's statements that he "has weapons, and that she has seen weapons" and refusal to allow police to retrieve weapons when presented with a Gun Violence restraining order provide probable cause to search for prohibited items. (See Opp. at 16:21-17:28, citing Exs. A and B.)

First, regarding the complaining witness's statements, although the Government argues Agent Correia's alleged knowledge of defendant's weapon's history provides corroboration, these facts were not included in the affidavits, and as such have no place in conducting a facial review. Further, her uncorroborated hearsay statements are too unreliable, conclusory, lack a requisite basis of knowledge and underlying facts required to place weight on them, such as when or where she made the

observations, or any description of said "weapons" that would indicate whether they were prohibited. (See also Motion at 23:7-24:20.) Second, the refusal to consent to the police entering again without a warrant should not be considered, and even if examined it adds little to the probable cause analysis. (See *Id.* at 24:21-25:6.) Third, defendant's criminal history only goes to the first element establishing he was an ex-felon, not whether he would have been in possession of any unlawful items at the time of the search. Finally, assuming arguendo Lt. Philip's observations are not excised, the Opposition fails to address the facts that absent from the affidavits is that they were seen in plain view, and as stated in the affidavits it could not be determined if any firearms observed were prohibited. (See Exs. A and B.)

If the first warrant is found invalid, the second search warrant obtained as a direct result of the execution of the initial warrant to expand its scope is also necessarily invalid. Even if the complaining witness's alleged additional statements in the second affidavit are considered, they lend little, if any, support to the probable cause analysis for the same reasons as those included in the initial warrant.

Accordingly, with or without consideration of the tainted evidence, under *Illinois v. Gates*, 462 U.S. 213 (1983), and its progeny, probable cause was lacking. Although the prosecution argues the good faith doctrine should apply, in a failed effort to satisfy their burden they simply rely on the arguments made to support application of good faith to the warrantless search, which as shown above lacks merit (Argument II.B., *supra*), and fail to address the authorities presented in defendant's moving papers demonstrating *Leon's* good faith exception has no application under the facts and circumstances in this case (see Motion at 28:14-16).

**B.     Alternatively, a *Franks* Hearing Should be Held and Warrants Traversed.**

The thirteen categories of false and misleading statements and omissions made in deliberate or reckless disregard of the truth, along with proffered evidentiary support, detailed in defendant's Motion, establish a sufficient preliminary showing to warrant an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny. (See Motion at 8:8-12:9, 25:14-28:13; see also Section I, *supra*.)

First, the Opposition only makes it more apparent that an evidentiary hearing is needed to resolve factual disputes and make credibility determinations. Second, a declaration by an officer *not* the Affiant, is insufficient to invalidate defendant's claims which are supported by recorded evidence. Third, the

1 | Government's allegation that defendant's claims are false are themselves false as is proven by the
2 | recordings. For example, the Government cites to the CAD log to discredit the defense assertion that
3 | there was no information to support a belief that anyone was in need of emergency aid before police
4 | entered the home (Opp. at 18:21-22); yet they fail to address the fact that the erroneous entry was
5 | clarified and corrected well before the police entered and, in any event, there was not even an erroneous
6 | entry reporting someone was in the home in need of emergency aid. (See Section I.A., *supra*, citing, e.g.,
7 | Ex. E at 3:10-11 and Ex. F at 2-3.) Another key example is the prosecution's false accusation that
8 | defendant's claims regarding the complaining witness' statements about weapons as reported in the
9 | affidavits are not true. (See Opp. at 18:26-26, citing, Ex. G at 69:6-21.) Not only did the affidavits omit
10 | she told dispatch that she did not know if he had any weapons (Ex. D at 3:4-5), but in contrast to the
11 | Opposition, the transcript of the police interview conducted before execution of the warrant reveals she
12 | never said Mr. Chan "has weapons, and that she has seen the weapons" as falsely presented in the
13 | affidavits. (See Ex. G at 69:6-21.) Finally, the prosecution's argument that some of defendant's proffers
14 | are irrelevant, fails to take into account the application of the totality of the circumstances analysis, and
15 | although they now argue irrelevance they address statements included in the affidavits and considered by
16 | the magistrate in issuing the warrants. Defendant maintains all the false statements or omissions
17 | advanced are relevant to determining the veracity of the information presented as a whole.
18 |     The defense will, therefore, not here engage in an attempt to resolve all these factual disputes, but
19 | rather point out that the Government's denial of the truth of the allegations is not a basis on which to
20 | deny an evidentiary hearing and traverse the warrants.

21 | **IV.  CONCLUSION**
22 |     In furtherance of our most valued rights under the United States Constitution, defendant
23 | respectfully requests this Court grant his Motion to Suppress.

24 | Dated: January 19, 2021              Respectfully submitted,

25 |                                       /s/ *John D. Forsyth*
                                          JOHN D. FORSYTH
26 |                                       Attorney for Defendant
                                          CLARENCE CHAN
27 |
28 |